ALBANY,
August, 1812.

STEELE
v.
SOUTHWICK.

A. was a witness in a cause between B. and C. and C. afterwards printed and published the following words of A. " Our army swore terribly, in Flanders, said Uncle Toby; and if Toby was here now, he might say the same of some modern swearers. The man, (meaning A.) is no slouch at swearing to an old story." In an action brought by A. for a libel, it was held that these words, if they did not import a charge of perjury in the legal sense, yet they were libellous, as they held up the plaintiff to contempt and ridicule, as being so thoughtless or so criminal as to be regardless of the obligations of a witness, and, therefore, as utterly unworthy of credit.

Where C. published a direct and positive contradiction of what a witness at a trial between B. and C. had sworn that A. had said; this was held not to be a libel, as it was not accompanied with any imputation of a crime in A.

## STEELE against SOUTHWICK.

THIS was an action for a *libel*. The first count stated that the plaintiff was sworn, and examined as a witness, in a cause tried at the circuit, in *Albany*, in which this defendant was plaintiff, and *Harry Croswell* defendant; that the plaintiff is a bookseller and stationer, in *Albany*, and has for a sign, a book lettered " *Bible*;" and that the defendant, maliciously intending, &c. on the 5th *December*, 1809, printed, &c. in " *The Albany Register*," a certain false, &c. libel, of and concerning the plaintiff, &c. as follows : " Affidavits. Our army swore terribly in *Flanders*, said Uncle *Toby ;* and if *Toby* was here now, he might say the same of some modern swearers. The man at the sign of the bible (meaning the plaintiff) is no slouch at swearing to an old story," (meaning, &c.)

The second count stated, that the plaintiff was examined as a witness in a cause between the defendant and *Croswell*, and testified truly, &c. ; that the defendant had told him, the plaintiff, that he, the defendant, approved of *Fox's* maxim, to wit, " That the public was a goose, and that he was a fool who did not pluck a quill when he had an opportunity." Yet the defendant, intending, &c. to cause it to be believed that the plaintiff, in giving the evidence aforesaid, was guilty of perjury, did, on the 9th day of *January*, 1810, publish, &c. a certain other libel in " *The Albany Register*," as follows, to wit, " As complete evidence of his candour, (meaning his honour Mr. Justice *Spencer*, before whom the cause was tried,) in the present case, for error there was none, I (the defendant) need only mention, that he told the jury, emphatically, that it was proved by *Steele*, that I had declared to him, that I approved of *Fox's* maxim, that the public was a goose, &c. ; that this was a very profligate sentiment, and that if they believed the testimony of *Steele*, they could not, in estimating damages, conceive any thing due to the feelings of a man capable of entertaining it, for that such feelings could not be injured ; but while I acknowledge the correctness of this decision, and most sincerely and heartily concur in it, I am bound to declare, which I now do most solemnly, in the presence of an all-seeing God, my

firm conviction, that I never made to *Steele* the declaration above stated. It is utterly impossible, from the barefaced absurdity, as well as from the abandoned profligacy, manifested by such a declaration, that I ever could have made it; and how that man's (the plaintiff's) imagination has wrought itself into a belief that I made it, is to me truly a subject of wonder, as it is of regret, that I find myself constrained, by what is due to my own honour, thus publicly and solemnly to deny what he has solemnly and publicly sworn to." By means whereof, &c.

ALBANY,
August, 1812.

STEELE
v.
SOUTHWICK.

There was a general demurrer to the whole bill, and a joinder in demurrer. The cause was submitted to the court, without argument.

*Per Curiam.* The plaintiff, in the first count, avers, that he had been called to testify, as a witness, in behalf of *Harry Croswell*, in a suit brought by the present defendant against the said *Croswell*, and that the defendant, afterwards, and with a view to injure the character and credit of the plaintiff, maliciously published the words stated in that count, in which the plaintiff is represented, as swearing " terribly," and as being " no slouch at swearing to an old story." These words import that he swore with levity, and rashly, and inconsiderately, without due regard to the solemnity of the oath, or to the truth and accuracy of what he said.

If the words do not import perjury in the legal sense, they hold the plaintiff up to contempt and ridicule, as being so thoughtless, or so immoral, as to be regardless of the obligations becoming a witness, and, therefore, to be utterly unworthy of credit. In this view, the words are actionable, for a writing published maliciously, with a view to expose a person to contempt and ridicule, is undoubtedly actionable; and what was said to this effect, by the judges of the C. B. in *Villers* v. *Mensley,* (2 *Wils.* 403.) is founded in law, justice, and sound policy. The opinion of the court, in the case of *Riggs* v. *Denniston,* (3 *Johns. Cas.* 205.) was to the same effect; and the definition of a libel, as given by Mr. *Hamilton,* in the case of *The People* v. *Croswell,* (3 *Johns. Cas.* 354.) is drawn with the utmost precision. It is *a censorious or ridiculing writing, picture, or sign, made with a mischievous and malicious intent towards government, magistrates, or individuals.* To allow the press to be the vehicle of malicious ridicule of private character, would soon deprave the moral taste of the commu-

ALBANY,
August, 1812.

nity, and render the state of society miserable and barbarous. It is true, that such publications are also indictable, as leading to a breach of the peace; but the civil remedy is equally fit and appropriate, and as the jury assess the damages, it is, in most cases, the more desirable remedy, and one which gives most satisfaction.

The second count does not appear to contain actionable matter.

The defendant confines himself to a denial of the charge, and a vindication of himself, and as that denial is not accompanied with any imputation of a crime to the plaintiff, or any thing like malicious or wanton ridicule of him, it does not appear to be any thing more than a lawful vindication. But as the demurrer is to the whole bill, the plaintiff is entitled to judgment.

Judgment for the plaintiff.