## SUPREME COURT.

JOHN H. MORE, respondent agt. JAMES GORDON BENNETT, appellant.

Printed or written matter, to be *libellous per se*, must necessarily be calculated to cast ridicule on a man, or to degrade him in the opinion of his acquaintances, or of the community.

Where the language is *ambiguous*, or where it affirms what is consistent with freedom from moral guilt, an allegation that the publication tends to blacken and injure the reputation of the plaintiff, and expose him to public hatred, contempt and ridicule, cannot be sustained without an *innuendo*.

Thus, where the charge was, that *a prostitute was under the patronage or protection of the plaintiff*, *held*, that it did not necessarily impute moral guilt, and that the complaint was fatally defective in not containing an *innuendo* explanatory of these ambiguous words.

The mere allegation in the complaint that the charge is false, malicious, and tends to injure the plaintiff's reputation, and expose him to public hatred and contempt, is not sufficient, where the words charged are so ambiguous that they may be understood in an innocent sense.

It is the office of the pleading to characterize the *intent* of the charge, so that the defendant may take issue upon it. The courts are not to seek for it in a complaint which states an ambiguous charge.

*New York General Term, January*, 1867.

*Before* BARNARD, CLERKE *and* LEONARD, *Justices.*

APPEAL by defendant from judgment at special term, rendered in favor of the plaintiff..

B. GALBRAITH, *for appellant.*
                            *for respondent.*

*By the court,* CLERKE, J.   This action was for an alleged libel, published in the New York Herald, of which defendant is the proprietor.   It is contained in a letter from the widow of a Colonel Kimball, which was published in that newspaper.   The writer, after referring to certain matters relating to her deceased husband, says:   "Among the papers referred to, as returned to me, are my own private letters, scattered indiscriminately among the others, and returned to me after being in the hands of a prostitute ; and in her hands, too, are other household relics that are sacred to a wife.   I find that I cannot obtain them, except through a long litigation by the public administrator.   The police have called upon this woman, and she refuses to give up anything belonging to my husband.   *She is, I understand, under the patronage or protection of a Mr. More, agent of the Central Railroad, who has also employed the orderly of my late husband.*"

Undoubtedly our law, like the Roman law, recognizes a very marked distinction between spoken slander, and slander communicated by pictures or signs, or writing or painting, or that published in books or newspapers.   Matters calculated to cast ridicule on a man, or to degrade him in the opinion of his acquaintances or of the community, is libellous, if written, or printed and published; although, if only spoken, it may not be actionable.   For instance, to accuse a man orally of being a liar, even in the presence of hundreds, is not actionable *per se ;* but to say of him in an article published in a newspaper or elsewhere, that he is a liar, is actionable, and no proof of special damage is necessary. (*Brooks* agt. *Berriep,* 8 *J. R.* 455).   A general charge of having sworn falsely, without reference to material evidence given by the plaintiff on the trial of a cause, is not actiona-

ble in itself; but it is actionable to print and publish the following words concerning a man : " Our army swore terribly in Flanders, said Uncle Toby; and if Toby were here now, he might say the same thing of some modern swearers; the man (meaning plaintiff) is no slouch at swearing to an old story." (*Steele* agt. *Southwick*, 9 *J. R.* 214.)

But the written or printed matter must necessarily be calculated to cast ridicule on a man, or to degrade him in the opinion of his acquaintances or of the community. Where the language is ambiguous, or where it affirms what is consistent with freedom from moral guilt, an allegation that the publication tends to blacken and injure the reputation of the plaintiff, and expose him to public hatred, contempt and ridicule, cannot, I think, be sustained without an *innuendo*.

The charge in the case before us, that a prostitute was under the patronage or protection of the plaintiff, does not necessarily impute moral guilt; and there is no allegation in the complaint that the writer of the letter intended, in this communication, to impute such guilt to the plaintiff. However improbable, it is very possible that the "protection" of which the writer speaks, may be such as the benevolent often grant to the most erring and debased. At the present day, there are benevolent and pious persons, not a few, dismayed at the alarming increase of abandoned women, who become their friends, protectors and patrons, with the hope of reclaiming and redeeming them. It is not impossible that the patronage and protection of which the writer to the Herald speaks, may be the result of similar benevolence. I think that the complaint was fatally defective in not containing an *innuendo* explanatory of these ambiguous words. The rule is, where the words *ex necessitate* expose the plaintiff to public ridicule or reproach, no explanation or appplication of the language used in the alleged libel is required; but when they are at all susceptible of an innocent construction, such explanation or application must be added, by what pleaders call an *innuendo* or *colloquium*, and in some cases by both. Among many cases to which I could refer,

I mention *Capel* agt. *Jones* (4 *Man. Gr. & S.* 259 ; 56 *E. C. L.* 258). See also *Hunt* agt. *Bennett* (19 *N. Y. R.* 173).

The order of the special term should be reversed, with costs.

LEONARD, J.  The plaintiff's complaint was dismissed at the trial, after the evidence for the plaintiff was concluded, upon the ground that the complaint did not state facts sufficient to constitute a cause of action.

The action is for a libel contained in a letter published in the New York Herald, of which the defendant is the proprietor, substantially alleging that a prostitute was under the patronage or protection of the plaintiff. The complaint alleges, that the publication refers to the plaintiff, and that he is thereby charged with having under his patronage or protection a public prostitute ; that it is false, malicious, and tends to injure his reputation, and expose him to public hatred and contempt.

The Code authorizes the complaint to be dismissed at any time, if the pleader does not state facts sufficient to constitute a cause of action. It is not unusual in such cases to allow an amendment, if the defect is technical, and will not operate as a surprise. It is in the discretion of the judge at the trial, whether to refuse or allow the amendment, and no ground of exception arises for his refusal to allow such amendment. It is discretionary. The question now comes up in the same manner as if it had arisen upon demurrer to the complaint. The objection taken is not waived by answering the complaint. (*Code,* § 148.)

The objectionable words in this case are actionable or otherwise, according to the manner in which it was intended they should be understood. The mere allegation of malicious intention is not sufficient, where the words are so ambiguous that they may be understood in an innocent sense. My brother CLERKE, has well explained the double sense in which the words complained of may be accepted. We are not to take the worst or most injurious sense, when the words may properly and naturally receive a harmless as well as an offensive construction. (*Button* agt. *Hayward,* 8

*Mod.* 24 ; *Holt* agt. *Lithfield,* 6 *Term R.* 691.) What was it the intent of the publication to charge the plaintiff with having committed, of an injurious or offensive nature, in the public estimation ? The pleading does not state. Are the courts to seek for it ? Surely not. It was the office of the pleading to characterize the intent, so that the defendant might take issue upon it. Had it been alleged by the complaint that the intent of the publication was to charge the plaintiff with keeping a prostitute for illicit purposes, the defendant might, by a denial, have raised an issue properly to be tried by the jury. Some such interpretation must be put upon the words before they become libellous, and it is the office of the complaint to do so in a case where the words have an ambiguous sense.

There are several strong authorities which illustrate this view. In *Dolloway* agt. *Tirrell* (26 *Wend. R.* 383), the publication charged the plaintiff with having officially certified that an affidavit was sworn to before him by the person signing it, when no oath was in fact administered. At the trial the court refused to submit to the jury the question of fact in what sense the words were used, it being insisted by the defendant that they imported only a charge of inadvertence on the part of the plaintiff. The judge charged that the words contained a charge of official corruption, and that it was only necessary to consider whether the defendant was guilty of the publication. It was held in the late court of errors, that the judge erred in these respects.

The fact of the certification did not by itself prove corruption in office. The charge was open to a harmless construction.

In *Capel and others* agt. *Jones* (56 *Eng. Com. L.* 258), a publication charging the plaintiff with purchasing two hundred railraw shares, under a false representation of the market, without any innuendo connecting the plaintiff with the false representation, was held not to be actionable.

Numerous other illustrations were cited upon the points of counsel, but these are, I think, sufficient.

The allegation that the publication was malicious, is not

sufficient.   It is the meaning and intention, that constitute the malice.   These depend upon the sense in which the words were used; and where they are ambiguous, the sense in which they become libellous must be stated.   Where the libellous words are not ambiguous, they require no statement or explanation to show their application or meaning.

The judge at special term must have granted a new trial upon the ground that the judge at the circuit committed an error in his interpretation of the alleged libel.   It could not have been for the refusal to permit an amendment, I think, as that is discretionary.

The practice of granting new trials at special term, by a different judge from the one who heard the cause at the circuit, for legal error at the circuit, is of very doubtful propriety, and has never been the practice in this district.   Errors of law committed by one judge, are more properly to be reviewed at the general term.   It ought not to be assumed that one judge has any better knowledge of the law than another.   If any other rule were to prevail, the judge having in fact the least knowledge, as well as the least delicacy, might, at special term, reverse a multitude of verdicts taken at the circuit before another judge more learned than himself.   In the present case, I think the judge at the circuit was right in his law, and that is the only question under review.

I concur with Judge CLERKE, that the order of the special term should be reversed, with costs, and that the defendant be at liberty to enter judgment, upon the direction of the judge at the circuit, dismissing the complaint, with costs.