# SUPREME COURT.

DANIEL FITZGERALD, respondent agt. CHARLES REDFIELD, appellant.

Words imputing to a *mechanic* want of skill or knowledge in his craft are actionable *per se.*

Thus, where the defendant publicly uttered the following words of and concerning the plaintiff, who was a mason by trade, to wit: that he "could not make a good wall or do a good job of plastering; that he was no workman and was no mechanic, but only a botch; that he did not want plaintiff to impose himself upon the people of Hornellsville as a mason, when he was not, but only a botch": *Held,* actionable *per se.*

*Seventh District General Term, June,* 1868.

*Present,* E. D. SMITH, JOHNSON *and* J. C. SMITH, *Justices.*

THIS is an action for slander. The plaintiff alleges that the defendant said of and concerning the plaintiff, who is a mason by trade and occupation, that he, plaintiff, "could not "make a good wall or do a good job of plastering; that he "was no workman and was no mechanic, but only a botch; "that he did not want plaintiff, Fitzgerald, to impose himself "upon the people of Hornellsville as a mason, when he was "not, but only a botch." The action was by consent referred to H. Holliday, Esq., referee, before whom the same was tried. The referee found for the plaintiff $50 damages, and costs. Judgment being entered upon the report, the defendant appealed.

HAKES & STEVENS, *for defendant, appellant.*

Appeal by defendant from a judgment entered upon the report of a referee.

Action for slander, in charging that the plaintiff, being a mason by trade and occupation, " could not make a good wall or do a good job of plastering ; that he was no workman and was no mechanic, but only a botch."

The referee, without finding that the plaintiff had sustained any special damages or finding as one of the facts any damage sustained, found as a conclusion of law that the words were false and slanderous, and that the plaintiff had sustained $50 damages, for which the plaintiff recovered judgment.

I. The alleged slanderous words are not actionable *per se.* To say of the plaintiff that he is "no mechanic, but only a botch," does not in any manner affect the plain

tiff's character. It involves no charge of moral turpitude. It charges no miscon-duct in his trade or occupation. "To make the speaking of the words wrongful they must in their nature be defamatory." (*Vicar* agt. *Wilcock*, 8 *East.* 1; 17 *N. Y.* 54; *Hallock* agt. *Miller*, 2 *Barb.* 630.)

It necessarily follows that the words must be disparaging to character. It will be seen that in all the cases where words are actionable *per se* by reason of being spoken concerning one's trade or occupation, except the learned professions, or tradesmen whose business it is to buy and sell, the slanderous words in some way affected the character, by charging dishonesty or misconduct in the business.

In the case of *Fowler* agt. *Bowen* (30 *N. Y. R.* 20), the alleged slanderous words charged the plaintiff with dishonesty as a clerk. In this case the court states the rule to be as follows: "Any charge of dishonesty against an individual, in connec-tion with his business, whereby his character in such business may be injuriously affected, is actionable." (*Approving, Van Tassel* agt. *Capron*, 1 *Den.* 250.) In this case the plaintiff, who was a justice of the peace, was charged as being a blackleg, and being in a combination to cheat strangers. Judgment was given for the defend-ant and this rule recognized, viz: "Where words are actionable only on account of the official or professional character of the plaintiff, it is not enough that they tend to injure him in his office or calling, but they must relate to his official or business character, and impute misconduct to him in that character." In *Burtch* agt. *Nickerson* (17 *John.* 217), the charge against a blacksmith of keeping false books implied misconduct.

The definition of the term slander *per se*, as stated in the elementary works, that it consists in falsely and maliciously charging another with the commission of some public offense, or the breach of some public trust, or with any matter in relation to his particular trade or vocation, and which, if true, would render him unworthy of employment, will not, in the light of the adjudged cases, include this case. The phrase "unworthy of employment," when applied to a mechanic or laborer, must evidently have reference to moral unfitness in connection with the vocation, and not to the relative degree of ability or skill to labor. If otherwise, it would be very unsafe to discuss by comparison or otherwise the relative ability of mechanics to labor.

II. The facts found by the referee do not authorize the first conclusion of law found by him in his report. The words spoken, as found by the referee, were not false and slanderous, and uttered with intent to injure the plaintiff in his business, as matter of law. The fact that the plaintiff was a mason by trade and occupation does not determine any particular degree of skill or ability as a mechanic of which courts will take judicial notice, either to make a wall or do a job of plastering. The word "botch," when applied to a mason, is not a very savage term. It refers to the work done, and not to the person. Webster defines it as "A patch, or the part of a garment patched or mended in a clumsy manner; ill finished work in mending." The other words are words of comparison. Not any of the alleged words imply malice, as matter of law. They do not charge the plaintiff with any illegal or immoral act, nor are they sufficiently censorious to base an action of slander upon. (*Hallock* agt. *Miller, supra.*)

III. The referee, not having found as a fact that the plaintiff sustained any dam-age, was not authorized to find as he did, in his report, that, as matter of law, "the plaintiff, in consequence thereof, has sustained damages in the sum of $50." If the words were actionable without any special damage, as matter of law, the plaintiff only sustained nominal damages. The statute (*Code*, § 272) is imperative that the referee shall find his conclusions of fact and law separately. The referee has com-plied with this statute. After the referee, who is the court, has declared the law,

from the facts found, that the plaintiff has sustained $50 damages, the plaintiff is not at liberty to claim that the court intended something different from that stated in the written report, which is equivalent to a decision of the supreme court, to stand as the law of the case, until reversed.

IV. The referee erred in denying the motion for a nonsuit, and in overruling the defendant's objections to any evidence being given under the complaint.

V. The referee erred in overruling the defendant's questions put to Henry S. Frisby.

VI. It is therefore claimed, on behalf of the defendant, that the judgment should be reversed, and the order of reference vacated.

## BEMIS & NEAR, *for plaintiff, respondent.*

I. The respondent insists that the words laid in the complaint, and found proved by the referee, are actionable *per se.*

In the conversation had with the witness Wiles, the defendant, among other things, said "that the plaintiff was no mechanic, and had done nothing in that line except carry the hod till he came to Hornellsville; that he was not down on him, but did not want him to impose on the people, when he was no mechanic, but only a botch; that Wiles had better get Pinch to do the work; that if it was not for his trusting out his work he would not get any."

In conversation with the witness Frisby, the defendant said "that the plaintiff could not make a good wall or a good job of plastering, and that he was no workman; that he was a botch."

These conversations were direc.ed very plainly to the plaintiff in his *vocation* or *trade,* and are clearly so directed with a view to prevent his being employed by Wiles and Frisby, and are connected with much other conversation tending to injure the plaintiff in his business, and showing malice.

There is no doubt or dispute about the plaintiff's being at the time engaged in carrying on the business of a mason for a livelihood.

That is slanderous which, spoken of the plaintiff in his business, "may impair or hurt his trade or livelihood." (*Blackstone's Com. 3d book, p.* 123.)

Also it is slanderous to charge another with " any matter in regard to his trade or vocation which, if true, would render him unworthy of employment." (1 *Kent's Com.* 628, *9th ed.;* 1 *Starkie on Slander, pp.* 136 *and* 137.) " The action extends to words spoken of a person in any lawful employment." (1 *Starkie,* 127.) "The humility of the employment or occupation is no objection, either in law or reason, to the action." (*Id. p.* 128.) " The words are actionable, whether they relate to the plaintiff's honesty, his credit, or the excellence of the wares in which he deals. ` (*Id.*)

The words "He knows not how to make a watch" are actionable. (1 *Moody,* 19.)

To accuse a midwife of ignorance is actionable. (1 *Vent.* 21.)

To say a physician is no scholar is actionable. (6 *Bacon's Abridgement,* 215.)

These cases sufficiently answer the appellant's claim, that words, to be actionable, must impute moral turpitude.

II. But special damages are alleged and proved as laid in the complaint. This might properly be shown, either as the gist of the action or as matter of aggrava- tion. (2 *Starkie on Slander, a.* 62.)

Wiles shows the loss of his work by the plaintiff wholly from the words spoken by the defendant.

Frisby's evidence shows the same as to his work. Loss of a customer is special damage. (1 *Starkie on Slander, p.* 203; 1 *Wend.* 506; 2 *Hill,* 309.)

The assertion made by the defendant's counsel, that Wiles and Frisby did not own the lots where the work was done, was without any force, as it could not be material who had title, so long as Wiles and Frisby employed the men, and gave out or withheld employment, as they saw fit. As to these parties, it was the work of whoever exercised the power of employing the workmen, as that power was all that was material in this case.

III. *Terwilliger* agt *Wand* (17 *N. Y.* 34) and *Hulteck* agt. *Miller* (2 *Barbour*, 630) have no application to a case where the words relate to the plaintiff *in his vocation* or trade.

Each of these decisions rests upon grounds entirely without force or application in this case.

IV. No exception can be available that the conversation alleged with Frisby took place at a different time from that set out in the complaint. It not being barred by the statute of limitations, " the allegation of time is immaterial. (22 *Barb.* 87.)

V. There is a very malignant feeling shown in this case on the part of the defendant, and nothing has been shown to justify or in any manner mitigate the slander. It is therefore submitted that the judgment is a very moderate one, and no reason exists why the finding of the referee and the judgment thereon should be disturbed.

*By the court,* JAMES C. SMITH, J.  The plaintiff is a mason by trade and occupation, and carries on his trade as a means of livelihood.   The defendant at various times uttered words charging the plaintiff with gross want of skill, knowledge and capacity in his craft, and, among other things, said of him "that he was no mechanic; that he could not make a " good wall or do a good job of plastering; that he was no " workman, and that he was a botch."

The only question is, whether the the words proved, having been publicly spoken of and concerning the plaintiff and of his trade, are actionable *per se.*  It is claimed by the counsel for the appellant that they are not actionable, as they involve no charge of moral turpitude or of misconduct on the part of the plaintiff in his trade or occupation, and therefore do not in any manner affect his character.   But in actions founded on this species of defamation, the question is not whether the plaintiff has suffered in his general reputation; it is whether he has been prejudiced in his employment.   It is said by a learned author, that, if the injurious words clearly relate to the plaintiff and his *occupation*, they are actionable, whether they affect his integrity, his knowledge, skill or diligence, his credit, or the subject matter in which he deals.   (*Starkie on Slander,* 130.)

It is contended, however, by the appellant's counsel that the rule above stated extends only to words spoken of men in their office or profession, and does not apply where the employment is of a mere mechanical nature. But that is not the law. The only distinction between the learned professions and mere mechanical occupations, in respect to the nature of the words necessary to maintain the action, is stated by the same author, thus: "Where the office, profes-" sion or employment of the plaintiff requires great talent " and high mental attainment, general words imputing want " of ability are actionable, without express reference to his " particular character, for they necessarily include an ability " to discharge the duties of such a situation; but when the " employment is of a mere mechanical nature, the words, to " be actionable, must be applied to it clearly and unequivo-" cally." (*Page* 136.) The author refers to several cases illustrating each branch of the rule. Thus, on the one hand, it has been held that to say of a barrister generally that he is a "dunce" is actionable, the word dunce being commonly taken to mean a person of dull capacity, who is not fit to be a lawyer. (*Peard* agt. *Johnes, Cro. Car.* 382.) So to say of a physician that he is "no scholar" is actionable, a learned education being considered to be an essential qualification in the medical profession. (6 *Bae. Ab.* 215.) On the other hand, it has been held that it is actionable to say of an apothecary "It is a world of blood he has to answer for in this town; through his ignorance he did kill a woman and two children at Southampton;" and to say of a midwife "Many have perished for her want of skill;" these words being spoken with reference to the particular occupation of the plaintiff, and clearly imputing a want of knowledge, skill or diligence in its exercise.

In the case of *Redman* agt. *Pyne* (1 *Mod.* 19), the words spoken of a watchmaker were " He is a bungler, and knows " not how to make a good piece of work." After verdict for the plaintiff, the words, on motion, in arrest of judgment,

were held by the court not to be actionable, not having been laid to be of the plaintiff's trade. But it was said that, had the words been "He knows not how to make a good watch," they would have been actionable.

Upon authority, therefore, words imputing to a mechanic want of skill or knowledge in his craft are actionable *per se*, if they are clearly shown to have been spoken with reference to the plaintiff's occupation, and the employment is one requiring peculiar knowledge and skill. In this respect, the authorities recognize no distinction between a learned profession and a mechanical trade, and manifestly there is none in principle.

In the present case, not only do the words themselves distinctly refer to the plaintiff's trade, but the referee has found the fact that they were spoken of and concerning the plaintiff, and of his occupation as a mason.

The judgment should be affirmed