Learned, P. J.
The statements of most importance in the publication are as follows: “That Mr. Moore was suffering from overwork, and his mental condition was not entirely good; ” that there had been a little trouble in the bank’s affairs, “occasioned by the mental derangement of Teller Moore, and that the latter’s statements, when he was probably not responsible for what he said, had caused some bad rumors.” The plaintiff insists that the court should have charged the jury that this article was libelous, instead of leaving them to decide whether it was so or not. How, the question is whether the court would have been justified in so charging. A libel is a malicious defamation of any person, in order to provoke him to wrath, or to expose him to public hatz-ed, contempt, and ridicule. 4 Bl. Comm. 150. A malicious defamation, tending to blacken * * * the reputation of one who is alive, and *163 expose him to public hatred, contempt, and ridicule. Hawk. P. C. c. 73, § 1. A censorious or ridiculing writing, * * * made with a mischievous and malicious intent towards * * * individuals. Steele v. Southwick, 9 Johns. 214; quoting from People v. Croswell, 3 Johns. Gas. 354. Apublication .which tends to injure one’s reputation in the common estimation of mankind; to throw contumely or reflect shame and disgrace upon him, etc. 1 Hil. Torts, 237. We must take the language used in this case, and see whether it comes within these definitions. It is possible that, in modern times, when the subject of mental derangement has been more thoroughly studied and understood, language imputing it may have a different effect on the mind of those who hear it from what it once had. It would be thought perhaps to be only a statement that the body was disordered, and that such disorder manifested itself in mental condition; and to say that a man is in poor health cannot be libelous as a matter of law. What difference whether the ill health affects the arm or the brain? The plaintiff’s counsel cites Southwick v. Stevens, 10 Johns. 443. The language there used was plainly intended to ridicule the plaintiff by a burlesque account of alleged insanity. Odgers, Sland. & Lib. 23, also cited by plaintiff, gives as authority Morgan v. Lingen, 8 Law T. (N. S.) 800. That was a case at circuit, tried before Baron Martin, where he stated to the jury that the question of libel or no libel was for them, but he would express his view that the language then in question was libelous. It was quite unlike that now under consideration. The language in Perkins v. Mitchell, 31 Barb. 461, was also unlike that of defendant. 1 Starkie, Sland. marg. p. 160, (which seems to be cited in the last case,) rests upon Morgan v. Lingen, ut supra. In Odgers, Sland. & Lib. 17, it is said that no general rule can be laid down stating what words are defamatory and what not; at page 16, “Libel or no libel is eminentlya question for the jury; ” at page 94, “It is for the jury to say whether or not the writing is a libel; ” with a full citation of cases. Baylis v. Lawrence, 11 Adol. & E. 920 et seq. That there are instances in which it is the right and duty of a judge to charge that the writing is a libel is, however, held in Hunt v. Bennett, 19 N. Y. 173, and some other cases. In the present article it is stated that the plaintiff was suffering from overwork. There is nothing disgraceful in that. The connection shows that such overwork was the alleged cause that his mental condition was not good. Certainly this would not cause public hatred, contempt, or ridicule. It would cause sympathy and regret. It could not blacken the plaintiff’s reputation. Ho offensive words are used. The mental condition of men is generally not good when they are suffering from overwork. Further, the article says that some trouble had been caused by this mental derangement. But this assertion is of the same character with the former. The mental derangement was the effect of overwork. And again it states that the plaintiff made statements, when he was probably not responsible for what he said, which had caused some bad rumors. Certainly statements made when one is not responsible for what he says, even if they be untrue, would not show that a man was a liar; and hence to say that a man’s statements, (as we may suppose in the delirium of a fever,) when he was not responsible, had caused some harm, would not disgrace the man, or cause contempt or ridicule. It seems to us, then, that it would have been incorrect to charge that this article was per se libelous as a matter of law.
But the complaint charges that the publication was with intent to injure plaintiff’s good name and credit in his profession as teller, and to cause it to be believed that by'mental unsoundness he had become incompetent to perform the duties of such profession or occupation, and it may be urged that on this account the publication was actionable per se. To sustain this, it must appear that the writing was of and in respect to the plaintiff’s occupation. Fitzgerald v. Redfield, 51 Barb. 484; Sanderson v. Caldwell, 45 N. Y. 398. But in the present case the words do not refer to the plaintiff’s skill, or want *164 of skill, as a teller. They have no special reference to his occupation. If the plaintiff had been a mechanic, and the allegation had been that by overwork he had lost 1ns bodily strength, that would not have had any special reference'" to his trade. The couít-, however, charged that if the tendency of the article was to injure the plaintiff in his profession it was libelous, thus leaving that question, as the court had left the other question, to the jury. It seems to us, then, that it was not error for the court to refuse to charge that the publication was libelous. In this view of the case, the court could not, as requested by plaintiff, charge that the plaintiff was entitled to a verdict, and that the only question for the jury was the amount of damages.
The defendants set up facts in mitigation. The plaintiff claims that these were not so specifically stated as to permit evidence to be given. Wachter v. Quenzer, 29 N. Y. 547. The illustration given in that case is this: If defendant has said that plaintiff is a thief, and is sued therefor, it is not enough in the answer to set up in mitigation the mere repetition that plaintiff is a thief, but he must state when plaintiff stole, etc. This is for a very good reason. To say a man is a thief is a general statement to the effect that at some certain time he stole. In mitigation or justification, the defendant must say when it was that plaintiff stole. ' But in the present case the alleged charge is mental unsoundness. There is no way of setting up other facts which, if true, would establish the truth of the charge. To set up strange actions, etc., of the plaintiff, would be to plead evidence, not facts. Ball v. Evening Post, 38 Hun, 16. To illustrate: If an alleged libel were that plaintiff on such a day, at such a place, stole a horse from such a man, the defendant could not be more specific in his justification or mitigation than he had been in his original charge. If the libel charged that at a certain time the plaintiff had a certain infectious disease, what facts more definite could be alleged in mitigation? So, in this case, we do not see that the defendants could practically be any more specific. This answer gave plaintiff all necessary information to enable him to meet the alleged mitigation. If not, he could have had a bill of particulars. Ball v. Evening Post, ut supra.
Part of the alleged libel was that there had been “bad rumors,”—that is, as to the solvency of the bank,—and that these were caused by plaintiff’s statements. Defendants gave evidence, under objection, to prove the existence of rumors of statements made by plaintiff. This did not tend, as plaintiff urges, to justify the defendants in publishing the alleged libel. But it did tend to prove that part of the publication which asserted the existence of such rumors as to the bank. The defendants did not offer to prove rumors of plaintiff’s mental derangement, which offer might have fallen within the objection made by plaintiff, but rumors of the statements concerning the bank’s solvency; and it was not even proved what statements had been made. Some evidence was given, under objection, as to plaintiff’s acts three or four weeks after the publication. This might be material, as tending to show his condition at the time of publication. A man’s condition of health often indicates his condition a short time previous. Before this publication there had commenced a “run” upon the bank. The defendants, or some of them, publishers of a newspaper, went to the bank to make inquiries on the subject, as one of public interest. While there they received statements from the officers of the bank, on the strength of which the publication was made. The object of the publication was to allay the public excitement in regard to the condition of the bank. These circumstances were shown at some length on tiie trial, with the view of mitigating the damages, should any be allowed by the jury, and it seems to us, on looking over the objections to evidence, in this view of the facts, that they are not well taken. We think the judgment and order should be affirmed with costs.
Ingalls, J., concurs.