(115 App. Div. 611)

### HUGHES v. NEW YORK EVENING POST CO.

(Supreme Court, Appellate Division, Second Department.    November 16, 1906.)

LIBEL—WORDS ACTIONABLE.

> A statement, in a newspaper article arraigning a magistrate for misconduct, that a certain lawyer's story was that he was thrown into jail by the magistrate, without a chance to tell his side of the case, on the complaint of a woman for whom he had collected a debt and from the amount of money collected had deducted the legal percentage for collection, was not libelous, either as holding the lawyer up to public reproach and ridicule, as tending to injure him in his profession, or as charging him with having been convicted of a criminal offense.
>
> Rich, J., dissenting.

Appeal from Special Term, Queens County.

Action by Alfred Hughes against the New York Evening Post Company.    From a judgment overruling a demurrer to the complaint, defendant appeals.    Reversed, and demurrer sustained.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Lawrence Godkin, for appellant.

Alfred Steckler (Levin L. Brown, on the brief), for respondent.

MILLER, J.    The defendant appeals from an interlocutory judgment overruling a demurrer to the complaint in an action for libel. The alleged libelous article is as follows:

Campaign Against Pool. `

"Meeting of Persons with Grievances Next Week.

"A Request from the Bar Association for Evidence—Instances of the Stories Which are Being Told to C. A. Sheehan and His Lawyers.

"In reply to the request of the Bar Association for information about the official conduct of Magistrate Pool, Charles A. Sheehan of the West Shore Railroad conferred to-day with E. Chrystie, assistant secretary of the Bar Association's committee on grievances, and promised Mr. Chrystie all he knows as soon as he gets his evidence in and has drawn up the specifications in definite form.

"Mr. Sheehan is conducting a regular campaign in collecting evidence of persons who have tales of the judicial eccentricities of Magistrate Pool, sending to each of such persons a typewritten 'blank for particulars of grievance.' Beside those who have been already published as responding to these blanks, Mr. Sheehan heard to-day from two others, Alfred Hughes, a lawyer, at No. 140 Nassau street, and S. G. Moore of No. 288 Greenwich street. *Mr. Hughes' story is that he was thrown into jail by Magistrate Pool without a chance to tell his side of the case, on the complaint of a woman for whom he had collected a debt, and from which amount of money collected he had deducted the legal percentage for collection.*

"Mr. Sheehan told this morning of the still stranger adventures of Mr. Moore, who had a mortgage on some furniture owned by a woman who lived in an apartment. She was dispossessed, and Mr. Moore, in order to protect the furniture, which was placed on the street, stored it in his own home, offering to let the woman have it as soon as she would pay for the removal and offering also to let her live in his house till she could find a place for herself. The woman, he says, arrested him for seizing her goods illegally, and Magistrate Pool at once had him locked up. He was released on bail, and at the hearing a few days later, he was returned to jail and his bail raised to $5,000. He at once got a man to offer this amount who possessed real estate valued at $75,000. Magistrate Pool, he says, refused to accept the real estate as surety and demanded that he should have the $5,000 in cash.

"Mr. Sheehan hopes to hand in his evidence in definite shape to the Bar Association this week. Early next week he will call a meeting of all the persons who have grievances, and the magistrate will also be invited to attend. Mr. Sheehan asserted to-day that he will not cease his efforts to have Magistrate Pool removed. His conference with Mr. Chrystie was in response to the following letter from Egerton L. Winthrop, Jr., attorney for the grievance committee of the association:

"'Dear Sir: Will you be kind enough to call, or have your attorney call, upon Mr. E. Chrystie, assistant secretary of the committee on grievances of the Bar Association, and give him any information which you have in regard to the official conduct of Magistrate Joseph Pool?'"

The plaintiff complains of the portion in italics, and seeks to sustain the judgment appealed from on the ground that the article is libelous per se, as tending to hold the plaintiff up to public reproach and ridicule, as tending to injure him in his profession as a lawyer, and as charging him with having been convicted of a criminal offense.

There is nothing ambiguous about the article. Considering the language used in its ordinary meaning according to the scope and object of the whole article, persons of ordinary understanding would not differ respecting its fair import and meaning. See Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725; Hayes v. Ball, 72 N. Y. 418; More v. Bennett, 48 N. Y. 472. The article is an arraignment of Magistrate Pool. It does not purport to impute anything wrong to the plaintiff. His alleged imprisonment is simply used as an illustration of the improper conduct of said magistrate. Any one of ordinary

intelligence, reading the article, would understand that the imprisonment of the plaintiff was illegal and that he had committed no crime. It is stated that this was done on the complaint of a woman for whom the plaintiff had collected a debt; but the only fair inference from the article is that the plaintiff had only retained his legal fees for collection and that the complainant had in fact no just complaint against him. It probably would be libelous to charge of a lawyer that he was put in jail upon the complaint of a client for whom he had collected a debt; but that is not the charge in question. The entire article must be read to determine whether the particular part complained of is libelous, and when so read the only fair import of it is that, notwithstanding the plaintiff had done no wrong, he was thrown into jail by the magistrate without being afforded an opportunity of stating his case, and that the conduct of the magistrate in connection with the case was so grievous as to afford a basis for his removal from office.

It is difficult to discover anything reflecting upon the character, professional ability, or conduct of the plaintiff. The general definition of libelous words as those which tend to subject a person to public hatred, disgrace, ridicule, or contempt is familiar; but it is very difficult to bring the case at bar within that expression as it is used in the cases. See People v. Croswell, 3 Johns. Cas. 354; Steele v. Southwick, 9 Johns. 214; Root v. King, 7 Cow. 613–620; Cooper v. Stone, 24 Wend. 434–440; Cooper v. Greeley, 1 Denio, 358; Stone v. Cooper, 2 Denio, 293–300; Shelby v. Sun Printing Association, 38 Hun, 474; Winchell v. Argus Co., 69 Hun, 354, 23 N. Y. Supp. 650; Morey v. M. J. Association, 123 N. Y. 207, 25 N. E. 161, 9 L. R. A. 621, 20 Am. St. Rep. 730; More v. Bennett, supra; Morrison v. Smith, supra; Lamberti v. Sun Printing & Publishing Association, 111 App. Div. 437, 97 N. Y. Supp. 694. The deduction to be made from the cases is that words, to be libelous, must impute some evil conduct, character, or principle to a man, tend to lower him in the esteem of the community, induce an ill opinion, or subject him to contumely or reproach. It is no reproach to say of a man that without any wrongdoing on his part he has been illegally put in jail, however much he might regret such publicity, and it cannot be that such a statement can disgrace him in the eyes of the community. The same reasoning applies to the claim that the article touches the plaintiff in his profession to his hurt. It is plain that an article, to be libelous as tending to injure one in his business or profession, must have a direct tendency to hurt, as would be the case of a charge of incapacity, dishonesty, insolvency, and the like. See Sanderson v. Caldwell, 45 N. Y. 398, 6 Am. Rep. 105; Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810; Bornmann v. Star Co., 174 N. Y. 212, 66 N. E. 723. The article in question in no way reflects upon the professional conduct, capacity, or character of the plaintiff, and we think it is not libelous, either as tending to injure him in his profession, or as subjecting him to hatred, ridicule, disgrace, or contempt.

The interlocutory judgment should be reversed, with costs, and the demurrer should be sustained, with costs, with the usual leave to the plaintiff to plead over on payment of costs. All concur, except RICH, J., who dissents.