## CONKLIN *v.* CONKLIN *et al.*

A husband filed suit for divorce against his wife, a non-resident of the State. . The petition for divorce alleged . the mental incapacity of the wife at the time of the marriage, unknown to the husband. The wife had both actual and legal notice of the pendency of the divorce case, but failed to appear and defend the same. Fourteen years after final decree granting to both parties a total divorce, the wife filed an equitable suit against the husband and others alleged to have been in conspiracy with him in the prosecution of the divorce case, to set aside the decree and to recover damages, alleging, in effect, that the ground upon which the decree was granted was fictitious and false and so known to the defendants at the time of the filing of the suit for divorce, and that she failed to defend the divorce case because the husband and one of his alleged coconspirators fraudulently represented to her, at or about the time of the filing of the suit for divorce, that the decree would be sought and obtained upon the ground of desertion upon the part of the wife. The wife had not in fact deserted the husband. *Held,* that the fraud charged is insufficient to relieve the plaintiff from the imputation of negligence in failing to defend the divorce suit; and that the petition, considered as a suit to cancel the decree of divorce or to recover damages, was properly dismissed upon demurrer.

No. 801. JANUARY 14, 1919. REHEARING DENIED FEBRUARY 14, 1919.

Equitable petition. Before Judge Hammond. Richmond superior court. January 14, 1918.

On October 30, 1917, Mary L. Greer Conklin filed a petition in equity in Richmond superior court against George H. Conklin, Boykin Wright, Oswell R. Eve, Alonzo F. Purdy as administrator

with the will annexed of Daniel B. Dyer, late of Richmond county, deceased, Turner C. Vason, and Dr. H. H. Malone, all of Richmond county, Georgia, the Dyer Investment Company, and the Augusta-Aiken Railway & Electric Corporation, also of Richmond county, Georgia, and Dr. Henry D. Allen, of Baldwin county, Georgia. In substance the plaintiff alleged as follows: On July 28, 1900, she was married to George H. Conklin in Fulton county, Georgia, "but lived with him as his wife only a very short while, because of his drunkeness and his cruelty to her." She went with him to his home at Augusta, with the intention of living with him, but she found it impossible, "because of his dissolute habits and his cruelty to her, which caused her health to break down and precipitated a nervous condition and insomnia." Daniel B. Dyer (a lifelong friend of her family) and George H. Conklin proposed to her that she go to a summer hotel in Baldwin county for the remainder of the summer; and she readily assented, "as a relief from the horrors of the condition in which she found herself as the wife of George H. Conklin;" and on August 3, 1900, she was placed under the care of the defendant Dr. H. D. Allen at his institution in Baldwin county. She was kept at Dr. Allen's institution, against her will, until October 17, 1900, when she was taken therefrom and placed by her brother in the Battle Creek (Mich.) Sanitarium. Dr. Allen maintained to her brother that his institution was not an insane retreat, and that petitioner "was not in any manner insane, but was suffering merely from a nervous breakdown." On May 12, 1902, the defendants entered into a conspiracy to "injure, ostracize, and damage petitioner by means of a fictitious judicial proceeding which purported to culminate in a total divorce between petitioner and George H. Conklin, . . in the superior court of Richmond county, Georgia, on the 28th day of October, 1903." The petition for divorce filed by Conklin against her contained the following false allegation: "That at the time of said marriage said defendant [referring to the present plaintiff] was a lunatic mentally incapable of contracting marriage," which fact was unknown to him at the time of the marriage. He also alleged that the plaintiff had been removed from Dr. Allen's sanitarium to a distant State, that when last heard from she was residing in the city of Chicago, Illinois; that on May 12, 1912, in Richmond superior court an order was passed reciting

41

that she was a non-resident of the State, and that it was necessary to perfect service upon her by publication; and it was accordingly so ordered. In compliance with said order a notice, bearing test in the name of the judge and signed by the clerk, was published and a copy of the publication was mailed to petitioner "when she was studying at the University of Chicago in Chicago, Illinois." Said notice contained the proper caption, and was addressed to the plaintiff, requiring her "to be and appear at the next October term of the superior court of Richmond county, Georgia, to be held on the third Monday in October, 1902, to answer a petition for divorce," filed by George H. Conklin as plaintiff against her as defendant. On January 19, 1903, an order was passed in the divorce proceeding, appointing Turner C. Vason as guardian ad litem for petitioner; and on the same day he accepted the appointment in writing. The first verdict for a total divorce was returned on April 25, 1903, and the second verdict was returned on October 28, 1903; and a decree was rendered, granting to both the plaintiff and the defendant a total divorce, and restoring to defendant in that suit her maiden name. "At or about the time of the filing of the pretended divorce petition in Richmond superior court," Conklin and Dyer (the latter having died before the filing of the present suit) represented to petitioner and certain members of her family that the divorce "was being procured on the ground of desertion on the part of petitioner. Petitioner and her family believed this representation, [and] were justified in believing it at that time." After the decree had been rendered in the divorce suit, petitioner and her family were led by Conklin and Dyer to believe that the divorce had been granted on the ground of desertion, and petitioner had no knowledge to the contrary until "about the 10th day of May, 1917. She had no positive knowledge of any injury to her because of said conspiracy and false testimony [referring to the testimony upon which the divorce was granted] until the 28th day of June, 1917." On or about June 25, 1914, petitioner met Mr. F. W. Andros, a wealthy, cultured, unmarried man of fifty years, of South America, and became engaged to marry him. Thereafter she advised Mr. Andros that she had resided in Georgia and had been married and divorced in Georgia. Subsequently Mr. Andros learned, from the record in the divorce proceeding, of the ground upon which the divorce had been granted,

and forthwith broke his engagement with plaintiff, without explanation, to her injury, mortification, and humiliation. Andros was a man of great wealth, and as his wife she would have received all the necessities and luxuries of life. On June 28, 1917, Andros advised her of his reason for breaking his engagement with her. In November, 1912, H. W. Freeman, a wealthy widower, residing in Massachusetts, was about to employ petitioner as a companion for his children; but when he learned that she had been divorced he held up the employment until he investigated the record in the divorce case, and then refused to employ her, thinking that she had once been insane. Had she procured the position with Mr. Freeman, she would have been well cared for, and, in addition to her board and forty dollars per month as a salary, would have been given the necessary time in which to "work at her profession as an author." "The false and infamous record in the divorce suit of George H. Conklin against Mary Greer Conklin in Richmond superior court, made possible only by and through the nefarious plans and designs of the conspirators herein named as defendants," was the sole cause of the plaintiff's failure to procure the position with Mr. Freeman and to consummate an advantageous marriage to Mr. Andros; said record likewise reflects upon her as a writer of books and magazine articles, to her financial injury and loss. The motive of the defendants other than Conklin, in conspiring with him, is set forth in the petition; and the failure of the guardian ad litem to defend the suit, and his participation in the conspiracy, are alleged. By amendment to the petition it was alleged that no process was attached to the divorce suit, for which reason the whole proceeding was void, the plaintiff (defendant therein) not having waived, by appearance or otherwise, this alleged defect in the proceeding for divorce. She prayed, that the verdicts and decree in the divorce suit be set aside for the fraud as already alleged; that all orders entered therein be vacated and canceled; that she have a judgment against the defendants in the sum of $200,000; and for process. Copies of the divorce suit with all orders therein, and of the verdicts and the decrees, are incorporated in the petition.

Each of the defendants filed demurrers, both general and special, raising similar questions of law. The principal grounds of demurrer were: The petition sets forth no cause of action; the plain-

tiff had actual and constructive notice of the pendency of the divorce suit, and is bound by the decree rendered therein; the cause of action for damages, if any, is barred by the statute of limitations; the allegations made in the suit for divorce are privileged; the allegations charging conspiracy are vague, irrelevant, and amount to conclusions of fact and of law; the damages prayed are too remote and speculative; and the facts alleged fail to show that the defendant corporations authorized, ratified, or in any way participated in the alleged conspiracy. The court sustained the demurrers and dismissed the action. The plaintiff excepted.

*Hill & Adams* and *L. D. McGregor,* for plaintiff.

*Barrett & Hull, Joseph B. Cumming, James C. C. Black, Callaway & Howard, C. H. & R. S. Cohen, Archibald Blackshear, Henry C. Roney, A. F. Purdy,* and *Allen & Pottle,* for defendants.

GEORGE, J. (After stating the foregoing facts.) In the view we take of this case it is unnecessary to consider and decide the several grounds raised by the special demurrers, and for that reason we have omitted from the statement of facts the allegations of the petition charging in detail the formation of the conspiracy, and the several acts of the various defendants in the execution of it, particularly those allegations against the defendant corporations, made for the purpose of showing their connection with the conspiracy.

The constitution of this State provides: "Divorce cases shall be brought in the county where the defendant resides, if a resident of this State; if the defendant be not a resident of this State, then in the county where the plaintiff resides." Civil Code, § 6538. The petition in the divorce suit alleged that the plaintiff, George H. Conklin, was a resident of Richmond county, Georgia; and that the defendant, Mary Greer Conklin, had returned to her former home in Winfield, Cowley County, Kansas, but that when last heard from she was residing in the city of Chicago, State of Illinois. That petition therefore alleged that the defendant in that suit was a non-resident of the State. Section 2951 of the Civil Code provides: "The action for divorce shall be by petition and process, as in ordinary suits, filed and served as in other cases, unless the defendant be non-resident of this State, when service shall be perfected as prescribed in this Code in causes in equity." Section 5552 of the Civil Code requires the clerk of the court to

annex to every petition, unless the same be waived, a process signed by the clerk or his deputy, bearing test in the name of a judge of a court, and directed to the sheriff or his deputy, requiring the appearance of the defendant at the return term of the court. Section 5553 provides: "If the defendant in an equitable proceeding does not reside in the State, service of the petition or any order of the court may be made by publication." Sections 5556 and 5557 provide for the manner and mode of service of the petition on a non-resident defendant by publication. Under these sections the judge of the court in which the suit is pending may order service to be perfected by publication in the paper in which the sheriff's advertisements are printed, twice a month for two months. The published notice shall contain the name of the parties plaintiff and defendant, with a caption setting forth the court and term and character of the action, and a notice directed and addressed to the party defendant, commanding him to be and appear at the next term of the court, and shall bear test in the name of the judge and be signed by the clerk of the court. Where the residence or abiding place of the non-resident is known, the party obtaining the order for the service of the petition by publication shall file in the office of the clerk, at least thirty days before the term next after the order for publication, a copy of the newspaper in which said notice is published, with said notice plainly marked; and thereupon the clerk of the court shall at once enclose, direct, stamp, and mail said paper to said party named in said order, and make an entry of his action on the petition. Under section 5558 it is made the duty of the judge trying the case "to determine whether such service has been properly perfected, and to write an order to that effect upon the petition in said case as showing service thereof, which shall also be entered upon the minutes of the court." The provisions of sections 5556, 5557, and 5558 were, according to the allegations in the present suit, fully complied with in the divorce case. The plaintiff in the present suit alleges in effect that she received the notice as required by the code section, and she makes no attack upon the validity of the several sections of our code providing for service by publication upon a non-resident party defendant. Moreover, she admits actual notice of the pendency of the divorce case, and alleges that she was advised by the plaintiff in that case and one of the alleged conspirators that the suit was

brought upon the ground that she had deserted her husband. We are of the opinion that as defendant in the divorce case referred to she was served with the notice of the suit and process of the court as required by the laws of this State.

It is to be observed that she did not desert her husband. , It is true she consented to leave him, "as a relief from the horrors of the condition in which she found herself," and to go to a summer hotel, according to the allegations of the petition. She distinctly alleges that the separation was due to her husband's "drunkenness and his cruelty to her." She therefore knew that her husband was seeking a divorce upon a false ground; conceding that she was ignorant, as a matter of fact, of the requirement of the law of this State, that desertion, in order to constitute a ground for divorce, must be continuous for a term of three years. She cer-' tainly knew that she had not wilfully deserted her husband, and under our code (§ 2945) "willful and continued desertion by either of the parties for a term of three years" shall be sufficient to authorize the granting of a total divorce. If the husband by his conversation and conduct compelled the wife for her safety to leave him and his home, he, and not the wife, was guilty of wilful desertion. In no event, according to the allegations of the petition, can it be said that Mrs. Conklin deserted her husband. We do not hold that the divorce suit referred to in this case was a collusive one, because, so far as disclosed by the petition, she did not consent to the bringing of that suit, nor did she in any wise assist, encourage, or aid in its prosecution. She did, however, exercise the legal and moral right to keep silent when she was confronted with the knowledge that her husband had brought the suit for divorce against her upon a false ground. So far as she now discloses, she was willing that the husband be granted a divorce upon the ground that she had deserted him. Indeed, her only complaint is that the husband sought and obtained a divorce upon the false ground of the mental incapacity of the wife at the time of the marriage. Our conclusion is that she is in no position to ask a court of equity to set aside a decree for divorce which she understood was to be granted upon a false ground, merely because a decree was in fact granted upon a different ground which she also alleges to be unfounded and untrue in fact. It is true that the charge in the petition for divorce, of the mental incapacity of the wife at the

time of the marriage, is a serious charge and one calculated to do the wife much harm if in fact untrue. If the wife was mentally capable of contracting at the time of the marriage, as she insists, and if the suit was brought as a result of a conspiracy and the divorce obtained upon false testimony, as charged in the petition, the wife has been grievously wronged. The fact remains, however, that she knew of the suit, had legal notice of the pendency of the suit, makes no attack upon the constitutionality of the statute providing for service of such notice by publication, and can not now be heard to complain that the judgment which she knew was being sought upon a false ground was obtained upon a different ground. She is precluded by her laches. Had the husband, or any one acting for him, represented to her that the divorce suit would be dismissed, or that no judgment or decree would be taken therein, the present case would be different. The plaintiff here would then occupy the position of a suitor who had been misled by the fraudulent conduct of the opposite party; and if she had a valid defense to the suit, equity would grant her the relief now prayed, and place her in position to defend that suit. It is to be noted that she does not now complain of the decree, but her complaint is directed to the allegations of the petition and the proof in support thereof upon which the decree was in fact rendered. She does not occupy the position of a diligent litigant, with a valid defense to an action, who has been misled by the fraud of the opposite party and thereby prevented from making that defense. If she stood in that position, she might invoke the aid of a court of equity.

From the foregoing it follows that the decree in the divorce case, rendered on October 28, 1903, in Richmond superior court, is a valid decree binding upon both parties thereto. Nothing alleged in the petition will enable the plaintiff to have that decree canceled. If, therefore, a wrong was committed upon her by the several defendants named therein, it must be held that her lack of knowledge of all the matters and things of which she now complains, and her failure to defend the suit, were due to negligence; and she can not now, after the lapse of fourteen years, maintain the present suit either for cancellation of the decree or for recovery of damages for the alleged tort. The demurrers to the petition were properly sustained, in our opinion, for the reasons stated.

*Judgment affirmed. All the Justices concur.*