## Paducah Newspapers, Inc., v. Bratcher.

(Decided Nov. 30, 1937.)

(As Modified Feb. 22, 1938.)

J. D. MOCQUOT and JOE LANCASTER for appellant.

J. C. SPEIGHT and F. F. ACREE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The appeal is from a $5,000 judgment for libel.

Appellee, A. S. Bratcher, was an instructor in the Commerce Department of Murray State Teachers College. He had with him two small children by a former wife from whom he had been divorced. She was living in the state of Georgia. On September 7, 1935, he brought suit in the Calloway circuit court against his wife, and asked that he be given the permanent care, custody, and control of the two children. By proper affidavit a warning order was asked and made. On November 11, 1935, Martha Bratcher filed in open court

an answer and counterclaim denying the allegations of the petition, and alleging several shortcomings on the part of plaintiff for the purpose of showing that he was unfit to have the custody of the children. On November 16, 1935, the Paducah Sun Democrat, owned by appellant, published an article concerning the litigation in the Calloway circuit court, and setting forth the substance of the charges made by Mrs. Bratcher against her husband. A few days later this suit was filed, and appellant defended on the ground of privilege. A demurrer was overruled to that paragraph of the answer. At the conclusion of the evidence a peremptory was asked and refused. As the peremptory should have gone if the publication was privileged we shall first consider that question.

Always it has been the rule that a fair report of judicial proceedings without malice is privileged. The reason for the rule is thus stated by Mr. Justice Lawrence in Rex v. Wright, 8 T. R. 293, 298:

> "Though the publication of such proceedings may be to the disadvantage of the particular individual concerned, yet it is of vast importance to the public that the proceedings of courts of justice should be universally known. The general advantage to the country in having these proceedings made public more than counterbalances the inconveniences to the private persons whose conduct may be the subject of such proceedings."

There is a disagreement among the authorities as to what stage of the proceedings the privilege may be invoked. It may be conceded that for a long time the great weight of authority has supported the view that the filing or service of a pleading without any judicial action thereon was not a judicial proceeding within the meaning of the rule giving a qualified privilege to a report of such a proceeding. This rule was applied in Cowley v. Pulsifer, 137 Mass. 392, 50 Am. Rep. 318, where it was held in an opinion by Judge Holmes, afterwards Mr. Justice Holmes of the United States Supreme Court, that the publication in a newspaper of the contents of a petition for the disbarment of an attorney, filed in vacation and not presented or docketed, was not privileged. In discussing the matter Judge Holmes said:

> "If these are not the only grounds upon which

fair reports of judicial proceedings are privileged, all will agree that they are not the least important ones. And it is clear that they have no application whatever to the contents of a preliminary written statement of a claim or charge. These do not constitute a proceeding in open court. Knowledge of them throws no light upon the administration of justice. Both form and contents depend wholly on the will of a private individual, who may not be even an officer of the court. It would be carrying privilege farther than we feel prepared to carry it, to say that, by the easy means of entitling and filing it in a cause, a sufficient foundation may be laid for scattering any libel broadcast with impunity.''

Later on the same court held that the publication of libelous matter stated in a complaint which has not been brought to the attention of the court, except so far as necessary to secure leave to file it after the return day, was not privileged. Lundin v. Post Publishing Co., 217 Mass. 213, 104 N. E. 480, 52 L. R. A. (N. S.) 207. Among numerous other cases so holding are Park v. Detroit Free Press Co., 72 Mich. 560, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544; Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 61 So. 345.

Recently the question arose in Campbell v. New York Evening Post, 245 N. Y. 320, 157 N. E. 153, 155, 52 A. L. R. 1432, where the court in an able opinion by Judge Pound, concurred in by all the other judges, held that the publication by a newspaper without malice of a fair and true statement that the complaint filed in a specified action charged the defendants with obtaining a stated sum of money by fraudulent practices, is privileged, although the pleading had not yet come before the court, and was withdrawn before it did so, on the ground that the filing of a pleading is a public and official act in the course of judicial proceedings within the meaning of a statute denying a right of action for the publication of reports of such proceedings. In reaching this conclusion the court used the following language:

"Mr. Justice Holmes in Cowley v. Pulsifer, 137 Mass. 392, 50 Am. Rep. 318, after putting aside various rhetorical and politic reasons for the rule, says that it rests on 'the plain distinction between

what takes place in open court, and that which is done out of court by one party alone.' But with us the act of one party institutes the action. The service of the summons begins the suit. A newspaper may publish of A. that B. has begun an action against him by the service of a summons. No reticence is demanded on that score. It may go further and state that the complaint has been filed in the county clerk's office. To stop there and hold that the newspaper states the contents of the complaint at its peril is to revive a rule of privacy in relation to litigation that no longer has substance. To say that privilege protects the publication of the complaint when the summons is served by order of the court on a nonresident and does not protect the publication when the defendant is a resident is to state a distinction that has no basis in common sense. We are not bound to keep up such frivolous legal fictions. Judicial proceedings in New York include in common parlance all the proceedings in the action. We may as well disregard the overwhelming weight of authority elsewhere, and start with a rule of our own, consistent with practical experience.''

In the more recent case of Lybrand v. State Co., 179 S. C. 208, 184 S. E. 580, 584, 104 A. L. R. 1118, the Supreme Court of South Carolina, after an elaborate discussion of the question, followed the New York rule, and held that the privilege attaching to the publication of reports of judicial proceedings extends to the publication by a newspaper of defamatory matter as having been alleged in a complaint filed, as required by law, in the office of the clerk of the court, although the case has not otherwise come before the court. In discussing the question the court said:

''To hold that an ex parte proceeding, which is privileged, such as an application for an injunction, an order of arrest, an attachment, or an order of publication—all of which may be done at chambers and in all of which the judge inspects the pleadings—is logically distinguishable from an action started by a summons, or a summons and complaint, filed in the office of the clerk of the court, does not commend itself to sound reason; especially when it is borne in mind that in such ex parte

proceedings the judge hearing the motion does not in any sense pass upon the merits of the case. It would seem that even the old rule would furnish very poor protection against the privileged publication of pleadings. If any one were really actuated by malice and wished to get scandalous charges before the public, such a one could easily have scandalous charges incorporated in a complaint filed in the proper public office, and then in due time before trial make a motion to amend the pleading in some respect. On such motion, which would come up before a circuit·judge, the pleading would ipso facto become privileged, whether such motion were granted or refused.

"We are unembarrassed by any precedent in this state in reaching a conclusion in this case. In this state of affairs, our main concern is to reach that conclusion which we believe to be logical and based upon sound reason. We would not turn our backs upon old precedents merely because of their antiquity nor adopt new doctrines merely because of their novelty.

"But we cannot escape the conclusion reached by the circuit court that the filing of a pleading is a public and official act in the course of a judicial proceeding, and that a publication thereof is privileged if it be a fair and impartial report of such proceeding, and without malice."

Not only does the reasoning of the New York Court of Appeals and of the Supreme Court of South Carolina appear the sounder, but this court is committed to the more liberal side of the question. Thus we held in Beiser v. Scripps-McRae Publishing Co., 113 Ky. 383, 68 S. W. 457, 24 Ky. Law Rep. 259, that an application to a justice of the peace to be permitted to make an affidavit for the purpose of instituting a prosecution was one step in a judicial proceeding, and, even though the application was denied, a fair and impartial report of the charge thus made was a privileged publication. Not only so, but in this state an action is commenced by the filing in the office of the clerk of the proper court a petition stating the plaintiff's cause of action, and causing a summons to be issued or a warning order to, be made thereon. Section 39, Civil Code of Practice. Manifestly, when that is done the contro-

versy is no longer a private one between two individuals, but is in all respects a judicial proceeding. The argument that one might file a petition for the purpose of having it published and then withdraw it is not very persuasive. In the first place, the probability of such action is very remote, and, as one may dismiss his suit at any time before verdict, the only way to forestall such action would be to postpone the privilege of publication until after final judgment, and few, if any, of the authorities go that far.

Here the answer and counterclaim was filed in open court after the action was regularly begun by the filing of the petition and the making of the warning order, and, there being no evidence of actual malice, we are constrained to hold that the publication, to the extent that it is a fair and accurate report of the charges contained in the answer and counterclaim, was privileged.

Comparing the petition with the answer and counterclaim, we find that the publication is a fair and accurate report of all the charges contained in the answer and counterclaim, with the exception of the language contained in paragraph 7, which is as follows:

> "Professor Bratcher's present wife, Mrs. Harriet Carrothers Bratcher, was a junior in Winthrop College, and was in Bratcher's class when they first met, according to the petition of the Professor's second wife. She asserts in the petition that Miss Carrothers spent afternoons in his office working as his secretary without pay, which led to a scandal among faculty members of the school."

As the foregoing language tends to prejudice Bratcher in his profession as a teacher, it cannot be doubted that it is actionable per se. Spears v. McCoy, 155 Ky. 1, 159 S. W. 610, 49 L. R. A., N. S., 1033. That being true, he was entitled to go to the jury on that item, and it was not error to refuse a peremptory instruction. Inasmuch, however, as the court by its instructions submitted the entire publication to the jury and not merely the item set out above, it follows that the instructions. erroneous and prejudicial.

Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.