## 33086. SHIVER *v.* THE VALDOSTA PRESS.

DECIDED SEPTEMBER 19, 1950.

*J. T. Edwards,* for plaintiff.

*Langdale, Smith & Tillman,* for defendant.

GARDNER, J. It appears from the petition as amended, that, on November 8, 1949, in Valdosta, Lowndes County, Georgia, the defendant published in its daily newspaper the following article:

"ANOTHER $300,000 SUIT IS FILED IN RACE CASE

"Charging that they are victims of 'members of a subversive organization' who used 'malicious abuse of civil process' a former Clyattville couple involved in a dispute over their racial background filed another suit for $300,000 damages before U. S. Commissioner W. E. Perry today. The suit charges Murrel

Holderby, Mrs. Lillie Holderby, C. C. Gay, W. J. Arnold, J. H. Dukes and Eddie Shiver (the plaintiff), with 'Malicious abuse of civil process' and slander. The suit was filed by George White and Dollie Seay White on their own behalf and on behalf of their four minor children, Edward White, Shirley White, George James White and Betty White. The Whites seek damages in the amount of $50,000 each for themselves and each for their children. The original suit filed in connection with the dispute asked similar damages from the above named defendants and declaratory judgment against the Lowndes County School Board. Judge A. B. Conger dismissed this suit in Thomasville last Thursday after the plaintiff's attorney requested it to be thrown out. The court ruled that the school board was authorized by law to act as a tribunal and further that the plaintiff's case did not come under the jurisdiction of the Federal court of the Middle District of Georgia. Since the original suit was filed, the Whites have moved to Gilchrist County, Florida. The attorney for the family said that the case is now under the jurisdiction of the Federal court. The six individuals named as defendants filed a formal complaint with the Lowndes County School Board, the suit charges, asking that the children of the Whites be excluded from the Clyattville Consolidated School on the grounds that they were of Negro ancestry. The White couple were subsequently arrested on warrants signed by Mrs. Lillie Holderby, charging 'felony-miscegenation' (marriage between whites and Negroes). They were released on bonds of $500 each. The Lowndes County Grand Jury is to consider the charge November 21. In the suit filed today the Whites' attorney again denied that Dollie Seay White and her children have Negro blood in their veins. The suit again contended that the White family was a victim of members of a 'subversive organization known as the Ku Klux Klan and/or the Southern Klan Inc., whose object and purpose is to promote envy, hatred, malice and discord' who 'did conspire to cause the issuance of said civil process for the purposes aforesaid and to satisfy their individual craving and desire and in the furtherance of the objects and purposes of said subversive organization.' The suit charged 'that as a direct result of the malicious abuse of civil process, plaintiffs have been excluded from society and held up to pub-

lic contempt, hatred and ridicule, and the minor plaintiffs have been forced by said exclusion, contempt and hatred, to interrupt their education.' "

The plaintiff alleged said article to have been maliciously published by the defendant and as being libelous per se in that it charges the plaintiff with being a member of a subversive organization and guilty of treason, namely the Ku Klux Klan, and also imputed to the plaintiff disgraceful conduct. The plaintiff further alleged that said article was not a fair and honest report of the court proceedings purported to be reported therein; and said article set out that the plaintiff and the others did conspire, confederate, and agree among themselves and caused the malicious issuance and abuse of civil process against the Whites, the family bringing the proceeding referred to and dealt with in this article. It was stated in the petition that the plaintiffs therein (the Whites) alleged "upon information and belief" that the plaintiff in this case and the others were members of said "subversive organization," and the defendant in said article purposely left out this preface from the article. The plaintiff further set up that the said article was therefore not privileged. The plaintiff also set up that the petition referred to was filed in the Federal court in Valdosta at 10:30 a.m. on November 8, 1949, and the newspaper of the defendant went to press at 11 a.m. on that day, and that said publication appeared on that day and before there had been any service on the plaintiff thereof; and that it appeared, therefore, that the defendant did not exercise good faith in the transaction, and that same was not a privilege, but was used merely as "a cloak by defendant for venting private malice." The plaintiff alleged that the wrongful acts and conduct charged to him by said newspaper article are false.

"A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures or signs, tending to injure the reputation of an individual," and its publication "is essential to recovery." Code, § 105-701. Words need not charge a specific crime in order to be libelous; they are actionable if they charge moral turpitude. See *Hardy* v. *Williamson*, 86 *Ga.* 551(b) (12 S. E. 874). "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending

to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery." Code, § 105-703. The publication of untrue statements which may tend to injure the reputation of another and expose him to public hatred, contempt, or ridicule, is presumed to have been malicious until sufficient evidence rebuts that presumption. *Horton v. Georgian Co.*, 175 *Ga.* 261 (165 S. E. 443). "In all actions for printed or spoken defamation, malice is inferred from the character of the charge. The existence of malice may be rebutted by proof, which in all cases shall go in mitigation of damages, and in cases of privileged communications it shall be in bar of the recovery." Code § 105-706.

When language used is actionable per se, malice is implied except where the utterance is privileged. Lack of malice in cases of privileged communications will prevent recovery. *Ivester v. Coe*, 33 *Ga. App.* 620 (127 S. E. 790). However, in the present case, the petition, as amended, charges express malice by the defendant in the publication of this article.

"The following are deemed privileged communications: . . Fair and honest reports of the proceedings of legislative or judicial bodies." Code, § 105-709 (4). This section is construed with § 105-711, which provides that "All charges, allegations and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious they are not libelous." *An absolute privilege is distinguished from a conditional privilege; in case of the former, malice is immaterial, but in case of the latter, the privilege is lost through malice.* See *Atlanta News Pub. Co. v. Medlock*, 123 *Ga.* 714 (51 S. E. 756, 3 L.R.A. (N.S.) 1139); *Ivester v. Coe, supra.*

Furthermore, there is no privilege, conditional or absolute, as to judicial proceedings where the report published is not true and correct. *Wood v. Constitution Pub. Co.*, 57 *Ga. App.* 123 (194 S. E. 760). An absolute privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person

who claims to be injured thereby, and even though it may have been made maliciously. 33 Am. Jur. 123, § 125. The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the State, and matters involving military affairs. This privilege is primarily intended to promote public welfare. The question of privileged communications is discussed in *Lamb* v. *Fedderwitz*, 68 *Ga. App.* 233 (22 S. E. 2d, 657; affirmed 195 *Ga.* 691 (25 S. E. 2d, 414), holding that the characteristic feature of an absolute privilege as distinguished from a conditional privilege is that in the former the question of malice is not open, all inquiry into good faith being closed.

In the case at bar, however, the newspaper article in question purports to be a report of a judicial proceeding—an action brought in the Federal court against the plaintiff in the case under consideration, in which he and others are charged with malicious use or abuse of civil process and damages are sought. While the article alleged here to be libelous, as appears from the petition as amended, constitutes a fair and correct report of the allegations of the petition in the suit against the plaintiff and the others in said United States court in Valdosta, it is alleged that the same was maliciously published by the defendant as a cloak for "venting private malice" against the plaintiff. While it is not charged by the plaintiff that this article contains statements not embodied in the allegations of the petition in the suit which was filed in said Federal court and on which the newspaper article was based, and while, on its face, the article shows that the reporter was either merely quoting from the Federal court petition verbatim or was repeating the substance of the allegations thereof, such article would not constitute a privilege if the defendant acted with express malice and a desire to injure the plaintiff and expose him to public hatred, contempt, and ridicule in the publication of the article in its newspaper. The petition as amended so charged, and the special demurrers were overruled and no error is assigned here thereon.

It is true that newspapers are not ordinarily held to the exact

facts or to the most minute details of the transactions they publish. What is usually required is that the publication shall be substantially, accurate; and if the article is published by the newspaper in good faith and the same is substantially accurate, the newspaper has a complete defense. But this is not true where express malice is charged generally, and the overruling of the special demurrers is not excepted to in this court. A newspaper is required to exercise due care in gathering and publishing news. See 39 Am. Jur. 19. There is no privilege as to judicial proceedings where the report published is not accurate and correct, or where the same is not done in good faith but with an express desire to vent "private malice" on another. See *Wood* v. *Constitution Pub. Co.*, 57 *Ga. App.* 123 (194 S. S. 760); affirmed 187 *Ga.* 877 (200 S. E. 131); *Atlanta News Pub. Co.* v. *Medlock*, 123 *Ga.* 714 (51 S. E. 756); *Atlanta Journal* v. *Doyal*, 82 *Ga. App.* 321 (60 S. E. 2d, 802).

"The report must present fully, fairly, and accurately an impartial account of the proceedings. Although it must be accurate, at least with regard to all material matters, a substantially accurate report may be privileged, as mere inaccuracies not affecting materially the purport of the article are immaterial. It is not necessary that the report be verbatim, and it may consist of an abridged or condensed statement, provided such statement is a fair one." 53 C.J.S. 205, 206, § 127. "A publication is not shorn of its privileged character because it is abridged or condensed." 33 Am. Jur. 150.

The fact that the newspaper reporter in stating one of the allegations of the petition omitted the preface to this allegation, which was "Upon information and belief," does not constitute an unfair and inaccurate statement as to the contents of the petition nor did the same unjustly present this allegation. See Stone *v.* Hutchinson Daily News, 125 Kan. 715 (266 Pac. 78, 58 A.L.R. 718). In that case an almost identical omission was made in the newspaper article, and the court ruled that the article did not pretend to follow the exact language of the pleading, and that "the published article was fully within the limits prescribed for the publishing of the privileged" pleading, and "therefore was qualifiedly privileged." To the same effect see Conklin *v.* Augusta Chronicle Pub. Co., 276 Fed. 288, where-

in the newspaper article stated that Mrs. Conklin agreed to her husband's having a divorce, whereas the court decision (*Conklin* v. *Conklin,* 148 *Ga.* 690, 98 S. E. 221), on which the article was based stated that Mrs. Conklin "was willing that the husband be granted a divorce." The court held that the newspaper article in that case was not libelous per se, and that it appeared to be beyond controversy that the article fairly and honestly reported the substance of the court's opinion. "Under the laws of Georgia, lack of malice in cases of privileged communications will prevent a recovery. A fair and honest report of court proceedings is a privileged communication." See also *Atlanta News Co.* v. *Medlock* (supra, p. 718).

There is no merit in the contention that the headline with which this article was captioned showed lack of good faith and malice. This headline reads "ANOTHER $300,000 SUIT IS FILED IN RACE CASE." This statement was not inaccurate. It was another suit and the damages sought were $300,000, and the case had been referred to as the "Race Case." It is true that one who desires to keep within the realm of privilege must not only make a report fair and accurate, but must also avoid the use of libelous headlines or captions. 33 Am. Jur. 101; Id. 180; 39 Am. Jur. 19. The law does not accord any privilege to newspapers to interpolate obnoxious opinions in the report of judicial or other proceedings, nor to add inflammatory headlines by way of introduction thereto. See Dorr *v.* U. S., 195 U. S. 138 (24 Sup. Ct. 808, 49 L. ed. 128); 39 Am. Jur. 19. This case does not fall within the foregoing rule. There was nothing obnoxious about this headline, nor was it inflammatory.

The plaintiff urges that there was no such case pending in the Federal court, at the time of the publication of this article, as rendered it a privileged communication and on which the newspaper could base a write-up as of judicial proceedings. The suit was filed around 10:30 a.m., and the paper went to press around 11:00 a.m. on the same day. There had been no service on the defendants therein. However, this suit became a matter of public record the moment it was marked filed in the clerk's office, regardless of whether it had been served or not. "Publication by a newspaper, without malice, of a fair and true statement that the complaint filed in a specified action charged the

defendants with obtaining a stated sum of money by fraudulent practices, is privileged, although the pleading has not yet come before the court, and is withdrawn before it does so, on the ground that the filing of a pleading is a public and official act in the course of judicial proceedings." See Campbell *v.* New York Evening Post, 245 N. Y. 320 (157 N. E. 153, 52 A.L.R. 1432). Also see Lybrand *v.* The State Co., 179 S. C. 208 (184 S. E. 580), and the annotations appearing in 104 A.L.R. 1123.

In *Abernathy* v. *News Pub. Co.*, 45 *Ga. App.* 693 (165 S. E. 924), this court ruled that the petition there was not subject to the general demurrer interposed. It was alleged therein that the publication was malicious, and it did not appear that the publication constituted a "fair and honest" report of a court proceeding and was therefore privileged. In the present case, the petition charged express malice in the publication by the defendant of this article.

In conclusion, the petition fails to set forth that the publication was not a fair and honest report of the proceedings in the Federal court; but, since the defendants are charged with express malice in the publication of such proceedings, the case will be submitted to the jury on the question as to whether the defendant here is guilty of express malice in the publication of the proceedings, though fair and honest.

Applying the foregoing, the petition as amended set out a cause of action for libelous publication of a newspaper article good as against the general demurrer, and the trial court improperly sustained the general demurrer and dismissed the petition, which distinctly alleged express malice in general terms. There was no error assigned in this court on the judgment, insofar as it overruled the grounds of special demurrer.

*Judgment reversed. MacIntyre, P.J., and Townsend, J., concur.*