## Arthur Wilson, Appellant, v. United Press Associations, Appellee.

### Gen. No. 45,157.

Opinion filed April 17, 1951. Rehearing denied April 30, 1951. Released for publication April 30, 1951.

EDWARD M. BURKE, of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; HOWARD ELLIS, J. B. MARTINEAU, GEORGES DAPPLES, all of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit for damages for an alleged libel. Defendant filed a motion to strike the complaint which was sustained by the court, and plaintiff having

elected to stand on his complaint, judgment was entered dismissing the suit at plaintiff's costs, from which he has taken an appeal.

The suit grew out of an article and a dispatch by the United Press Association dated September 24, 1948 to a newspaper known as the Kankakee Daily Journal at Kankakee, Illinois, as well as to various other newspapers in Illinois and other states, reporting the decision of the Illinois Supreme Court reversing and remanding plaintiff's conviction on a charge of the unlawful use of high explosives with intent to do bodily harm to his estranged wife, on which he had been found guilty by a jury in the criminal court of Cook county and sentenced to ten years in the penitentiary. By writ of error plaintiff had brought this sentence to the Illinois Supreme Court which reversed the judgment of the trial court and remanded the cause for a new trial because the trial judge had permitted erroneous and incompetent evidence to be introduced, and had refused counsel for defendant an opportunity to argue a motion for a new trial. (*People v. Wilson,* 400 Ill. 603.) The opinion of the Supreme Court does not indicate that *supersedeas* had been granted. In a release to its subscribers the United Press reported the opinion and decision of the Supreme Court. One of its subscribers, the Kankakee Daily Journal, republished defendant's report on September 24, 1948, as follows: "Supreme Court Grants Wilson A New Hearing.

"Arthur V. Wilson, 56, wealthy Pembroke township land owner and oil well promoter now serving a 10-year sentence for assault with intent to kill his estranged wife, has been granted a new trial on a writ of error by the Illinois Supreme court.

"The court ordered a new trial for Wilson after a finding that improper proof was entered in his original trial in Cook county Circuit court. The highest court in the state also held that the jury was not kept to-

239

gether and permission to allow arguments for a new trial was denied by Judge Julius H. Miner at the time of the first trial.

"Wilson was convicted of planting high explosives in the automobile of his wife, Hertha, a Chicago public school teacher, in September, 1946. She was seriously hurt when the charge exploded under the floor boards of the vehicle. Wilson was charged with assault with intent to kill.

"The day after the incident Wilson was arrested at Momence by Chicago officers. He admitted being in Chicago the night of the blast but denied attaching the explosives to the vehicle."

Plaintiff admits that the entire report concerning his conviction, sentence and the action of the Supreme Court was all true except that part of the first paragraph which states that he was "now serving a 10-year sentence for assault with intent to kill his estranged wife." In other words, plaintiff feels aggrieved because of defendant's report that he was *actually* serving his term pending review of his conviction by the Supreme Court, whereas he was really free on bail during the pendency of the appeal: and the sole question presented is whether this circumstance can be made the basis of an action for libel.

It is evident that the pertinent news angle in the release and article was the fact that plaintiff had been improperly convicted and had been granted a new trial. Whether he was or was not serving his sentence or was free on bail was of secondary importance. Defendant was reporting the decision of the Supreme Court, and anyone reading the article in full would take as its salient points the information that the Supreme Court had reversed plaintiff's conviction for the reasons stated and that he would be accorded a new trial because of prejudicial error in the first hearing. It was the granting of a second trial, rather than the

erroneous report of plaintiff's imprisonment, that was the high light of the article. In this connection it should be noted that a reading of the Supreme Court opinion would suggest that plaintiff had actually begun to serve his sentence, since the court states that the case had come before it on writ of error and does not say that *supersedeas* had been granted. The United Press release and the Kankakee Daily Journal dispatch as a matter of fact constituted accurate reportage of the Supreme Court opinion.

There are numerous decisions in New York where similar situations have been considered from time to time and decided by the courts of that state, even before the enactment of section 337, chapter 561 of the New York Civil Practice Act (1940), which provides that ''a civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial, legislative or other public and official proceedings, or for any heading of the report which is a fair and true headnote of the statement published.'' The public policy which motivated the enactment of that statute in New York and decisions in that state should be persuasive in other states as affording sound reasons for holding that a writing such as this is not libelous because it does not tend to injure the complaining party. In *Hughes v. New York Evening Post Co.*, 115 App. Div. 611, 100 N. Y. Supp. 982, a newspaper article reporting a certain lawyer's story that he was thrown into jail by a magistrate, without an opportunity to tell his side of the case, on the complaint of a woman for whom he had collected a debt and from the amount of money collected had deducted the legal percentage for collection, was held not libelous, either as holding the lawyer up to public reproach and ridicule, as tending to injure him in his profession, or as charging him with having been convicted of a criminal offense. After setting

forth the article in full, the court observed that considering the language used in its ordinary meaning according to the scope and object of the whole article, persons of ordinary understanding would not differ respecting its fair import and meaning, and pointed out that the article was an arraignment of the magistrate and ''does not purport to impute anything wrong to the plaintiff. His alleged imprisonment is simply used as an illustration of the improper conduct of said magistrate. Any one of ordinary intelligence, reading the article, would understand that the imprisonment of the plaintiff was illegal and that he had committed no crime. . . . The entire article must be read to determine whether the particular part complained of is libelous, and when so read the only fair import of it is that, notwithstanding the plaintiff had done no wrong, he was thrown into jail by the magistrate without being afforded an opportunity of stating his case, and that the conduct of the magistrate in connection with the case was so grievous as to afford a basis for his removal from office.''

In *Rein v. Sun Printing & Publishing Ass'n,* 196 App. Div. 873, 188 N. Y. Supp. 608, the article complained of stated that plaintiff had been arrested on the charge of selling stolen securities, but it also stated the details of the transaction which showed that he was innocent of the charge. In holding that the statement was not libelous, the court said that ''this innuendo [that the article charged plaintiff with a crime], it seems to me, is absolutely unwarranted by the article itself, which makes no such charge. On the contrary, it shows that both Cowl and the plaintiff were innocent and the victims of a plot on the part of criminals. Under the terms of this pleading, the plaintiff might well in fact have been arrested, and the article therefore in that respect be true.'' See also *O'Connor v. Press Pub. Co.,* 34 Misc. 564, 70 N. Y. Supp. 367, *Engel v. New*

*York Evening Post Co.,* 38 Misc. 377, 77 N. Y. Supp. 884, and Seelman's Law of Libel and Slander in the State of New York, article 402 at page 395.

■ Outside of New York we find a case strikingly in point, *Skrocki v. Stahl,* 14 Cal. App. 1, 110 Pac. 957. The article there complained of stated that "Skrocki was an anarchist and a brother of Walter Skrocki, who, when President McKinley was assassinated, remarked to a fellow workman on Mare Island, 'He ought to be killed.' He was placed under arrest and held at the city jail, but the complainant refusing to press the charge, the prisoner was released." Skrocki had not actually been placed in jail, and the article was inaccurate to this extent. Defendant interposd the plea that Skrocki's statement about President McKinley was true. The court pertinently stated that "in relation to the failure to prove that plaintiff was arrested and detained in jail, it is entirely clear that this was without prejudice to any of his substantial rights. The rule established here by the authorities, and manifestly based on right reason, is that the defendants were not required to justify every word of the defamatory matter. It was sufficient if the gist or sting of the libelous charge was justified, and immaterial variances and defects of proof upon minor matters are to be disregarded if the substance of the charge be justified. *Hearne v. De Young,* 119 Cal. 670, 52 Pac. 150, 499. The sting of the charge here is that the plaintiff said that President McKinley 'ought to have been killed.' The clear implication is that plaintiff was a man of abandoned character, opposed to the reign of law and order, and favoring the assassination of public officials. In comparison with such a charge how insignificant is the accusation that he was arrested therefor and detained in jail. It would require certainly a good deal of temerity for any one to argue to a jury that, although defendants were justified in declaring in effect

that plaintiff was an anarchist, he was damaged by the false publication in regard to his arrest. If this contention were made, the jury would probably conclude that such a man could not be and was not injured by such a comparatively trivial accusation."

█ Applying the same reasoning to the case at bar, it seems fair to state that the gist of the report is that plaintiff had been improperly convicted, and not the inconsequential accusation that he had begun to serve the sentence imposed upon him by the lower court. It being admitted that the article correctly reported the opinion which stated that he had been indicted, found guilty by a jury as charged, and sentenced to imprisonment, but that the judgment had been reversed for prejudicial error, plaintiff could not be injured by the erroneous statement that he was serving his ten-year sentence pending appeal of the case rather than the factual statement that he was out on bail pending appeal, a circumstance which could not be ascertained from a reading of the opinion which was reported by defendant. We think the article complained of is a substantially true and accurate report of official proceedings of the Supreme Court of Illinois, and since this appears from the face of the dismissed complaint, it would be useless to require defendant to answer the complaint and stand trial; a trial could add nothing to the admitted facts.

█ In cases cited by plaintiff (*Herhold v. White,* 114 Ill. App. 186, *Adle v. Herald Co.* (Misc.), 36 N. Y. Supp. (2d) 905, and *Ray v. Times Pub. Co.* (Tex. Com. App.), 12 S. W. (2d) 165), the language complained of was that the offended party in those proceedings "is and has been behind bars," "held in jail since the fatal crash" and "was arrested and placed in jail." Those statements standing alone impute criminality, but if made in a context which does not impute criminality, they are not actionable. The principal question in the

case at bar is whether or not defendant made a substantially fair report of the Supreme Court decision; we are not concerned with the question of whether or not plaintiff was guilty of assault with intent to harm or kill his estranged wife, and in fact defendant's news release does not state that he was. In our opinion the report of the decision is substantially accurate and fair, and therefore not libelous. Accordingly, the judgment of the circuit court should be affirmed, and it is so ordered.

*Judgment affirmed.*

SCHWARTZ, P. J., concurs.
SCANLAN, J., took no part.