The **AMERICAN DISTRICT TELE-GRAPH COMPANY,** an Alabama corporation, et al., **Plaintiffs-Appellants,**

v.

**BRINK'S INCORPORATED,** a Delaware corporation, **Defendant-Appellee.**

No. 15849.

United States Court of Appeals Seventh Circuit.

May 8, 1967.

Rehearing Denied June 21, 1964, en banc.

Roger W. Barrett, Robert L. Stern, Jack Guthman, Chicago, Ill., for appellants. Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

James F. Ashenden, Jr., Robert F. Hanley, Robert S. Foster, Robert S. Rob-

in, John F. Dobler, of O'Keefe, O'Brien, Hanson, Ashenden & Hartenfeld, A. Daniel Feldman, David L. Lange, of Isham, Lincoln & Beale, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The American District Telegraph Company, an Alabama corporation, and 47 other such corporations (severally incorporated with similar names under the laws of 47 other states of the Union), plaintiffs, have appealed from an order of the district court, sustaining a motion for summary judgment made by Brink's, Incorporated, a Delaware corporation, defendant, and dismissing plaintiffs' complaint.

1. This is a libel action in which jurisdiction is based on diversity of citizenship. Illinois law controls here.

Plaintiffs (a group of related, affiliated or subsidiary companies constituting the business enterprise generally known to the public as "ADT") charge Brink's with having maliciously published false and defamatory statements concerning ADT and affecting ADT in its business. Brink's moved to dismiss ADT's complaint or in the alternative for summary judgment, contending that the statements were qualifiedly privileged as a report of a judicial proceeding, that those statements accurately reported the judicial proceeding, and that ADT had not alleged facts showing actual malice on the part of Brink's.

Brink's claims that the statements here involved were contained in a press release prepared and distributed by it to a number of news media for the purpose of publicizing the filing of a lawsuit brought by it against ADT. The release purported (1) to describe Brink's lawsuit and (2) quoted certain allegations from its complaint against ADT.

Substantially the theory of count I of ADT's complaint is that the words of the press release by Brink's, "although absolutely privileged as part of a judicial proceeding when they appeared in Brink's complaint, lost all claim of privilege when they were published as part of the press release". ADT in its brief sets forth substantially that count II alleges that "the portions of the press release which described Brink's lawsuit did so in such a way as substantially to misrepresent the nature of the charges made". In addition, ADT's complaint alleges that "all this was done by Brink's with actual malice, spite and ill will toward ADT and with the intent to impute dishonesty and dishonorable practices" to it and damage its reputation.

2. Plaintiffs' counsel admit that under Illinois law there is a qualified privilege to report judicial proceedings. But they rely on a case decided in 1884, Cowley v. Pulsifer, 137 Mass. 392, 395, which spoke of

" * * * the plain distinction between what takes place in open court, and that which is done out of court by one party alone, or more exactly, as we have already said, the contents of a paper filed by him in the clerk's office. * * * "

and they point out that some courts have followed *Cowley*. However, in 1927, the final court of review of New York state rejected *Cowley* in Campbell v. New York Evening Post, 245 N.Y. 320, 157 N.E. 153, 155–156, 52 A.L.R. 1432. Similar rulings have been made by other states, including Illinois.

Lulay v. Peoria Journal-Star, Inc., 34 Ill.2d 112, 114, 214 N.E.2d 746, 746–748 (1966). Lorillard v. Field Enterprises, Inc., 65 Ill.App.2d 65, 73–74, 213 N.E.2d 1, 5 (1st Dist. 1965).[1] Lybrand v. State Co., 179 S.C. 208, 184 S.E. 580, 584, 104 A.L.R. 1118 (1936). Paducah Newspapers, Inc. v. Bratcher, 274 Ky. 220, 118 S.W.2d 178, 179–180

1. In *Lorillard,* at 74, 213 N.E.2d at 5, the court said:
   " * * * If suit had been filed any statements concerning these facts would

have been privileged as fair comment concerning a judicial proceeding. * * * "

(1938). Langford v. Vanderbilt University, 199 Tenn. 389, 287 S.W.2d 32, 37 (1956). Torski v. Mansfield Journal Co., 100 Ohio App. 538, 137 N.E.2d 679, 683–684 (Ohio Ct.App.1956), appeal dismissed, 165 Ohio St. 245, 135 N.E.2d 63 (1956).

Other cases to the same effect are: Wilson v. United Press Association, 343 Ill.App. 238, 98 N.E.2d 391 (1951); Segall v. Lindsay-Schaub Newspapers, Inc., 68 Ill.App.2d 209, 215 N.E.2d 295 (1966); Watson v. Herald-Despatch Co., 221 Ill.App. 557, 559 (1921); Kantor v. Dziennik Zjednoczenia Pub. Co., 295 Ill.App. 412, 15 N.E.2d 31 (1938).

■ 3. ADT argues, in support of its allegation that Brink's acted with actual malice in reference to the press release, that the fact that the press release was made is some evidence of malice, and, in addition, the extent of the distribution of the press release is evidence of malice, the release having gone to various weekly magazines and "other business magazines". In other words ADT's argument is that, because Brink's was interested in obtaining wide publicity for its charges against ADT, its efforts were attributable to an express malice on the part of Brink's. But we do not believe that plaintiffs' evidence, offered in an attempt to sustain its contention that Brink's acted with actual malice, was sufficient to raise a jury question. Lulay v. Peoria Journal-Star, Inc., supra, 34 Ill.2d at 115–116, 214 N.E.2d 746, Reed v. Albanese, 78 Ill.App.2d 53, 223 N.E.2d 419 (1966). We agree with the Restatement of Torts, ch. 25 Title C § 611, where it is said that the privilege accorded to representing a public activity, which includes judicial proceedings, is lost only if the report is published "*solely* for the purpose of defaming the other and not * * * of informing the public" (emphasis supplied). It seems to us that the dissemination of neither the fact of filing of a document in court nor the facts as to the contents of the document tended to prove an improper purpose within the meaning of this rule. Thus, in *Lulay*, 34

Ill.2d at 115–116, 214 N.E.2d at 748 the court said:

"* * * The burden of proving actual malice is always upon the plaintiff, and it would not be the ordinary case where a plaintiff could establish that a news report or discussion of governmental activities was only published because of actual malice. * * Although the plaintiff contends that the defendant here was guilty of actual malice, plaintiff did not offer any evidence remotely creating an issue of fact as to whether defendant's news article was conceived or inspired solely because of a malicious design to injure the plaintiff or his business. The plaintiff had the obligation both upon the motion for summary judgment and at the trial to adduce all of the evidence he believed would satisfy his burden. * * * "

We hold that the record fails to show that there was any evidence of actual malice as alleged by plaintiffs and, so far as the main thrust of the complaint is concerned, no error occurred in the district court.

■ 4. Finally, plaintiffs cite as error that Brink's press release included the following statement:

"* * * the failure of the warning devices provided by A.D.T. * * * resulted in the burglary of the Brink's vault at Syracuse. * * * "

They say that this reference "can be read as meaning that the sensitive microphones at the site of the burglary would not work, not that the system failed because the telephone company's wire was cut. So read, it fallaciously and deceptively imputes complete insensitivity to the microphonic system—in contrast to a failure to prevent an ingenious burglar from electrically bridging the telephone connection so that the alarm would not go off."

ADT's complaint alleges that one of the press services furnished to the newspapers, and there was published, a story relating to Brink's lawsuit which said that "ADT equipment was so insensitive

that it failed to detect the firing of armor-piercing shells into Brink's vault."

Rather than prolong this opinion with further analyses of this subject, we adopt this statement of Brink's brief:

"*   *   * The one sentence fragment which ADT has seized upon does not permit the inference ADT draws and would not be actionable if it did. Thus, the District Court was clearly correct in deciding, as a matter of law, that the press release was substantially accurate."

For the foregoing reasons, the order from which this appeal was taken is affirmed.

Order affirmed.

SWYGERT, Circuit Judge (dissenting).

American District Telegraph Company (ADT) has been engaged in the electric protection industry for more than ninety years. It currently supplies such protection to more than 90,000 customers throughout the country and has furnished electric burglary protection to various offices and branches of Brink's, Incorporated for more than sixty years. One of the Brink's offices thus serviced was located in Syracuse, New York. The alarm system supplied by ADT at that location was a device containing sensitive microphones to detect sound installed in the bank vault. In October 1965 Brink's Syracuse branch was burglarized. The burglars entered the vault through a hole blown in the vault wall by firing armour-piercing shells from a cannon. Previously, the burglars had somehow defeated ADT's warning device by attaching bridging equipment to the telephone wires leading to the alarm and severing the wires, thus preventing a warning signal from being transmitted to the ADT central station.

In December 1965 Brink's filed an action for damages against ADT in the federal district court in Chicago charging fraudulent misrepresentations by ADT. Brink's complaint alleged that because ADT's protective devices were not as effective as ADT had represented

them to be the burglary at Syracuse had been successful and that by reason thereof Brink's had suffered damages in excess of $500,000. In subsequent counts Brink's charged that the ineffectiveness of ADT's equipment had also damaged Brink's by forcing it to provide additional protection at all of the other Brink's offices serviced by ADT.

Simultaneously with the filing of its complaint, Brink's distributed a press release to various news media, including the New York Times, the Washington Post, the Wall Street Journal, the Chicago daily newspapers, the three national wire services, and several business and news magazines. The press release headline read:

BRINK'S FILES THREE MILLION DOLLAR SUIT AGAINST AMERICAN DISTRICT TELEGRAPH

CHARGES FRAUDULENCE AND FALSE REPRESENTATION

The press release itself announced the filing of the complaint and stated in part:

Brink's alleges that ADT contrived to cheat, wrong and defraud them by falsely stating and representing to the company certain benefits that Brink's should receive from their electric burglary and hold-up protection equipment. *   *   * Since the failure of the warning devices provided by ADT, which resulted in the burglary of the Brink's vault at Syracuse, Brink's took immediate steps to provide additional protection.

The release went on to recite the allegations of Brink's complaint, including the statement that as a result of deceptive representations by ADT, Brink's Syracuse vault had been burglarized by burglars "who entered plaintiff's vault through a hole blown into a wall of the vault by the firing of over 30 armour-piercing shells into the vault wall, after defendant's electric burglary devices and equipment had been defeated and compromised by the burglars. *   *   * "

Subsequently, in March 1966, ADT filed the instant libel action against Brink's. ADT's complaint alleges that the statements contained in the press release were false; that the press release summarized the complaint filed by Brink's in an inaccurate and misleading manner so as to give the impression that ADT's warning devices were so insensitive that they failed to detect the firing of armour-piercing shells; and that the press release was distributed by Brink's with "actual malice" against ADT. Brink's moved for summary judgment, contending that the press release was privileged and that no substantial issue of fact sufficient to overcome the privilege existed with respect to actual malice on its part. The district court granted the motion without comment.

Contrary to the view expressed by the majority, I believe that Brink's press release was not privileged as a report of a judicial proceeding and that, even if a qualified privilege did exist, the question of actual malice should not have been disposed of by summary judgment.

As the majority opinion notes, there is, under Illinois law and elsewhere, a qualified privilege to report judicial proceedings. But the threshold question here is whether that privilege extends to the publication of the contents of a complaint before any judicial action has been taken with respect to it. The Illinois courts have not addressed themselves to this question. The Illinois decisions cited in the majority opinion, notably Lulay v. Peoria Journal-Star, Inc., 34 Ill.2d 112, 214 N.E.2d 746 (1966) (newspaper held privileged to report the proceedings of a city health department), and Lorillard v. Field Enterprises, Inc., 65 Ill.App.2d 65, 213 N.E.2d 1 (1965) (report that bigamy suit had been started held libel per se; no privilege existed or claimed because no suit for bigamy had in fact been filed), are wholly inapposite. In such circumstances we "may assume that state law will accord with generally accepted principles of substantive law," Jackson v. Sam Finley, Inc., 366 F.2d 148, 153 (5th Cir. 1966), and

should examine and apply such principles.

The rule enunciated in Campbell v. New York Evening Post, Inc., 245 N.Y. 320, 157 N.E. 153, 52 A.L.R. 1432 (1927), stated by the majority as having been followed by "similar rulings" of the Illinois courts in *Lulay* and *Lorillard*, does not represent, I submit, either the prevailing or sounder line of authority. "[T]he prevailing view, with some few courts to the contrary, [is] that a pleading or a deposition filed in a case but not yet acted upon may not be reported under the claim of privilege." W. Prosser, Law of Torts 818 (3rd ed. 1964). The basic reason for the rule that some official action is essential to the privilege, as Dean Prosser states, is "because of the opportunity afforded for malicious public defamation and even extortion, through suits begun and promptly discontinued. * * *" Ibid.

Professors Harper and James similarly state:

[I]t is very generally held that pleadings or extracts from pleadings may not be published with the protection of the privilege until some judicial action has been taken with reference thereto. The reasons for this rule are clear. Isolated pleadings, particularly preliminary ones, are bound to present but one aspect of a dispute. Moreover, it would be a tempting device for the unscrupulous defamer if he could, with impunity, institute groundless and sensational suits only to dismiss or abandon them after their scurrilous contents had been given wide currency in the tabloids and newspapers which run to yellow journalism. "The public have no rights to any information on private suits till they come up for public hearing or action in open court." Thus, the publication of a petition, an answer, a deposition or an affidavit before a hearing has been held, does not receive the protection of privilege. 1 F. Harper & F. James, Law of Torts 433 (1956).

In 1945 the Supreme Judicial Court of Massachusetts rejected the minority

view espoused in *Campbell* that the privilege to report judicial proceedings attaches immediately upon the filing of a complaint. In Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 61 N.E.2d 5, 7 (1945), the court declared:

> Public policy requires a glare of publicity upon the doings of courts, even though individual litigants suffer unmerited harm. But the publication of accusations made by one party against another in a pleading is neither a legal nor a moral duty of newspapers. Enterprise in that matter ought to be at the risk of paying damages if the accusations prove false. To be safe, a newspaper has only to send its reporters to listen to hearings rather than to search the files of cases not yet brought before the court. The older doctrine of the Cowley and Lundin cases still seems to us well founded in principle and without injustice in its practical operation. It is supported by the great weight of authority in other jurisdictions. Am.Law.Inst. Restatement: Torts § 611, comment c, 33 Am.Jur., Libel and Slander, § 157. We adhere to it.

The authorities just discussed are merely representative. Nevertheless, the analyses contained in them indicate that Illinois, if faced with the question, would probably conclude that there is no privilege to publicize the contents of a complaint prior to any judicial action on it.

The instant case, however, need not turn on whether the Illinois courts would adopt the rule stated in *Campbell*. A more refined question is presented. That question, which assumes the existence of a qualified privilege in the news media to publicize pleadings, is whether such a privilege extends to a plaintiff in a lawsuit who distributes a press release repeating the defamatory material contained in his complaint.

There are solid reasons why the privilege ought not be extended to allow a plaintiff to publicize his own complaint by the issuance of a press release. If such action were permitted, a plaintiff, under the guise of reporting a judicial proceeding, would be able to engage freely in defamation and to publicize his defamatory statements beyond what normally might be the situation if the news media were not furnished the press release. It is one thing to acknowledge that there may be a public benefit which warrants affording newspapers virtual immunity from liability for defamation in reporting the contents of pleadings filed in court.[1] It is another thing to say that a plaintiff should be permitted to broadcast the contents of his own complaint, thereby inviting newspapers to publish what they might not otherwise publish. Such permission, if allowed to a plaintiff, would beget gross abuses of a privilege without any corresponding public benefit. Further, as stated by the plaintiffs in this case, no public interest warrants a plaintiff in taking steps to maximize the publication of his defamatory allegations at the moment when the proceeding is instituted, before the publication can be tempered through judicial action or the filing of opposing material.

Finally, even if Brink's was qualifiedly privileged in issuing its press release, ADT's complaint alleged actual malice, and the allegation was supported by, among other things, a letter written by Brink's president to the president of Brink's parent corporation which disclosed impermissible motives for the issuance of the press release. In my view

---

1. The cases in which the courts have adopted the *Campbell* rule have been suits against newspapers. E.g., Langford v. Vanderbilt Univ., 199 Tenn. 389, 287 S.W.2d 32 (1956); Shiver v. Valdosta Press, 82 Ga.App. 406, 61 S.E.2d 221 (1950); Paducah Newspapers, Inc. v. Bratcher, 274 Ky. 220, 118 S.W.2d 178 (1938); Lybrand v. State Co., 179 S.C. 208, 184 S.E. 580, 104 A.L.R. 1118 (1936). One case, Phillips v. Murchison, 252 F.Supp. 513 (S.D.N.Y.1966), has held that a plaintiff in a civil suit is privileged in distributing a press release relating to the filing of his complaint. That case not only followed the New York [*Campbell*] rule, but also a New York statute which makes the privilege applicable to "any person."

the press release and the supporting materials created an issue of fact as to malice[2] which should not have been resolved against ADT on the basis of the pleadings and a subsequent self-serving affidavit executed by Brink's president.

I would reverse.

Rehearing denied.

KILEY, SWYGERT and CUMMINGS, Circuit Judges, vote to grant the petition for rehearing *en banc*.

2. Dean Prosser suggests that the term "malice" is inappropriate to describe the abuse of a privilege of publication. He states: "Perhaps the statement which best fits the decided cases is that the court will look to the primary motive or purpose by which the defendant apparently is inspired. Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection." W. Prosser, Law of Torts 821–22 (3rd ed. 1964).