**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

v.

**Frank CONGLETON, Jr., et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 17, 1969.

John B. Breckinridge, Atty. Gen., Robert J. Rieckhoff, Don Duff, Dept. Highways, Frankfort, Cecil C. Sanders, Lancaster, for appellant.

George T. Ross, John W. Palmore, Richmond, for appellee.

DAVIS, Commissioner.

In this condemnation proceeding the jury found a before value of $128,700 and an after value of $93,700 resulting in its verdict of $35,000 in favor of the landowners. The Department of Highways appeals from the judgment entered on the verdict, asserting that the verdict is palpably excessive and not supported by evidence of probative value. The appellees prosecute a cross-appeal which is actually in the nature of a motion to dismiss the appeal on procedural grounds.

The property involved in this action is a farm of 164.73 acres situated on Kentucky Highway 52 about 3½ miles from Eastern Kentucky University and about two miles from an important highway known as the Eastern Bypass; 19.8 acres of right-of-way for non-access Interstate Highway 75 are taken, leaving 29.3 acres on the east side of I-75 and 115.63 acres on the west side of the new highway. A service road is being provided so that there will be access to the highway system for the 115-acre tract. An underpass is being constructed so that travel may be had under I-75 from the service road.

The Department presented one appraisal witness who fixed the before value at $116,500 and the after value at $94,000, resulting in a difference of $22,500. Witnesses for the appellees testified to before values ranging from $145,000 to $165,000 and after values ranging from $91,000 to $106,500; the differences between before and after values as related by witnesses for the appellees range from $49,000 to $58,500. As noted, the jury's finding of after value was $93,700, only $300 less than the after value fixed by the witness for the Department. It is apparent that the dispute between the litigants relates to the matter of the before value as fixed by the jury vis-a-vis the amount claimed by the Department to be the proper before value. The verdict of $35,000 exceeds by $12,500 the $22,500 which the Department's witness expressed as his opinion of the difference in before and after values. On a per-acre basis the before value fixed by the jury is approximately $780 per acre, whereas the before value fixed by the Department's witness is about $706 per acre. The disparity in these figures is not so great as to suggest at first blush that the jury's verdict is palpably excessive. Moreover, we find that the evidence presented concerning values possessed probative value sufficient to sustain the verdict.

Witnesses for the landowners testified that much of the property was adaptable for subdivision purposes. They testified that there is a strong market demand in the area for subdivision properties. This fact distinguishes this case from Paintsville-Prestonsburg Airport Board v. Galbraith, Ky., 433 S.W.2d 868. In their view I-75 will create such a barrier as to destroy subdivision potential for any of the 115-acre tract. The Department's witness recognized that about 50 or 60 acres of the tract had subdivision possibilities. Those acres were on the front portion of the farm as it faced Kentucky Highway 52 so that the taking encompassed nearly 20 acres of the land which was recognized as having subdivision potential. All of the witnesses testified to sales of nearby properties which they deemed comparable to the subject property and which they considered in formulating their evaluations. The Department strongly contends that the witnesses for the landowners failed to take into account the abnormal increase in land values in the area which occurred after the taking date of June 1, 1964. A review of the record refutes the Department's contention in this respect. The witnesses did recognize that market values have increased since the taking on June 1, 1964, and "adjusted" their evaluation figures to take that increase into consideration. Early in the trial the first evaluation witness testified concerning a

sale which he considered comparable in which fifty acres of land were sold for $2,000 per acre some two years after June 1, 1964. The witness said that he estimated the property would have brought $1500 an acre in 1964 and that he had adjusted his appraisal figures accordingly. Thereupon the following colloquy occurred:

"THE COURT: What percentage do you put to the increase of the land out on the Lancaster Road in the last three years? What percentage has land gone up, as a whole, out on the Lancaster Road in the past three years?

A. I haven't tried to break it down that way. I haven't tried to put a percentage to it.

THE COURT: But you figure it has gone up $500.00 an acre in the last two or three years?

A. That's right. For subdivision purposes.

OBJECTION: MR. SANDERS: I am going to object to that evidence being competent unless he can show land selling for that at the time of the taking or right after the taking since he has no means to show the increase.

THE COURT: I am going to admonish the jury on that again. The date of the taking of this land must be fixed at June 1, 1964, and you will hear evidence about values. It is unlikely that you will get a sale right on that date but you all bear in mind when you fix a value it is June 1st, 1964, and not what it is selling for today. It is not what any property would bring today. It is what under the conditions that existed on June 1, 1964, what that property is worth. You have to go through a mental gyration and come up with that figure. Bear that in mind."

■ In light of the specific admonition of the court, coupled with the testimony of the witnesses who recognized that prices have risen since June 1, 1964, and who professed to have taken all of this into account in making their appraisements, we are not persuaded that the Department's

position is correct when it contends that the jury was erroneously led into using market values as of the trial date as distinguished from the market values prevailing on the taking date. Cf. Tharp v. Urban Renewal and Community Development Agency, Ky., 389 S.W.2d 453.

The cross-appeal of the appellees is based on the fact that the Department filed its motion and grounds for new trial without scheduling any time for hearing upon the motion. Reliance is had upon CR 6.04 (1) which provides:

"A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served a reasonable time before the time specified for the hearing, unless a specific period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application."

Our attention is directed to Clay CR 6.04, Author's Comments 2, Page 111, in which it is said:

"The apparent intent of the Rule is that a notice of hearing of motions required to be served should be given in all cases as a part of the motion procedure. Since one of the underlying purposes of the Rules is to expedite the disposition of cases, and motions for delay purposes should be condemned, a speedy hearing on all motions is imperative. Thus it might be argued that a party has not properly made a motion by simply serving and filing it without giving notice of some hearing date. The better uniform practice would be to serve such required notice with all motions."

■ Appellees contend that the motion for new trial, without a scheduled hearing, was no motion at all and did not toll the running of time for perfecting an appeal. Thus, they reason, the notice of appeal was untimely filed. We agree that better practice dictates the scheduling of a hearing date when a motion is filed. However, we are unwilling to say that the failure to schedule such a hearing date is to be regarded as equivalent to failing to

**510**

file the motion at all. In this case the appellees made a motion in the trial court to strike the motion and grounds for new trial because of the Department's failure to schedule a hearing on the motion, but at a hearing the trial court overruled the motion to strike and at the same time overruled the Department's motion for new trial. The trial court exercised a proper judicial discretion in denying the motion to strike. In such instances the trial court may properly put the movant on reasonable terms as to a hearing date, but under the existing Civil Rules may not treat the motion as a nullity.

The judgment is affirmed on the original appeal and cross-appeal.

MONTGOMERY, C. J., and HILL, MILLIKEN, OSBORNE, REED and STEINFELD, JJ., concur.

PALMORE, J., not sitting.