COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Thomas E. BALDWIN, Jr. et al., Appellees.

Court of Appeals of Kentucky.

Oct. 3, 1969.

John B. Breckinridge, Atty. Gen., Don Duff, Dept. of Highways, Phillip K. Wicker, Dept. of Highways, Frankfort, Cecil C. Sanders, Lancaster, for appellant.

George T. Ross, John W. Palmore, Richmond, for appellees.

DAVIS, Commissioner.

The Department of Highways seeks reversal of the judgment in this condemnation proceeding whereby the appellees were awarded $73,950.66 pursuant to the verdict in the action. As grounds for reversal the Department contends (1) that the trial court erred when it supplied the jury with a list reflecting the names of the valuation witnesses along with the before and after values as related by each witness, together with the respective differences in before and after values of each witness, and (2) that the verdict is so palpably excessive as to appear at first blush to have been rendered as the result of passion or prejudice and is not supported by evidence of probative value.

■ By cross-appeal the appellees have sought dismissal of the appeal on the ground that the appeal is untimely filed since the motion and grounds for new trial as filed in the circuit court did not provide a scheduled date for the hearing of the motion and, therefore, did not toll the running of time for appeal. We have already rejected the same contention in Com., Dept. of Highways v. Congleton, Ky., 436 S.W.2d 507. That decision is dispositive of the issue presented by the cross-appeal.

The appellees own a farm in Madison County situated about 4½ miles from Richmond. Before the taking the farm contained 692 acres. Duncannon Lane, a county road, substantially divided the farm into two tracts before the taking, but that road was not heavily traveled and presented little or no difficulty in farming the entire tract as a unit. The taking is for I–75 and embraces 70.57 acres. The Department points out that after the taking the farm is substantially severed into four sections so that the northeast section contains about 157 acres, leaving 145.4 acres in the northwest section, 84 acres in the southwest section, and 235 acres in the southeast section. Duncannon Lane remains and will cross I–75 by means of an overpass. More details of the before and after situation of the property will be mentioned in discussion of the question of excessive damages.

After all the evidence was presented and before the case was submitted to the jury, the trial judge advised counsel for both sides that he had prepared a paper setting out the name of each appraisal witness along with the before and after figures used by the respective witnesses and containing the differences in the before and after values as computed by each of them. The court afforded each litigant an objection to his action in this respect and explained to the jury the purpose of the paper in these words:

"The court has prepared a summary of what the witnesses have said as to valuation, for you to take with you when you go to your jury room. This shows the Baldwin farm, 692 acres, land taken 70.-57 acres. The date of taking, May 3, 1965, and you know that is the date all of your values are to be fixed and then, the name of each witness that testified, the valuation he placed on the total farm before the taking, the valuation he placed on the farm after the taking, and then the mathematical computation showing the difference each witness assigned here between the two. Also, under each of these evaluations is the figure that each witness placed on the farm, the value per acre before and after the taking.

"I am going to give that to you because it is the opinion of the court that it should be more than a guessing game and it is not fair to you to try to remember what seven witnesses testified to on five separate matters. You have 35 figures to keep in your head and this is just

for summary purposes. That doesn't mean that any of these figures have any particular significance over any others. That is for you to determine. At least, you will know what they said."

■ Citing A. Arnold & Son Transfer & Storage Company v. Weisiger, 224 Ky. 659, 6 S.W.2d 1084; Davis v. Pendennis Club, 230 Ky. 465, 19 S.W.2d 1078; and Paducah Newspapers, Inc. v. Bratcher, 274 Ky. 220, 118 S.W.2d 178, the Department reasons that the action of the trial court in submitting the summary to the jury is reversible error. It is not contended that any inaccuracy existed in the summary as to the figures contained, nor is any other plausible basis suggested for the contention that the court's conduct was prejudicial to the Department. A reading of the cited authorities makes it clear that none of them is controlling, as the facts in each vary widely from those at hand. All of them recognize the broad discretion of the trial judge in such circumstances. It seems to us that CR 61.01 forecloses the Department's argument. That rule ordains that no error in any ruling or in anything done or omitted by the court may be the ground for disturbing a judgment or order unless the refusal to do so is inconsistent with substantial justice. In other words, harmless error will not be made the basis for overturning a judgment of the court. We do not suggest that the action of the trial judge was error at all, but we need not decide that point because it is patent that no prejudice to either party could have resulted from the court's summary of the figures accomplished as it was without emphasis or suggestion as to which, if any, of them should be accepted by the jury.

The Department presented three witnesses as to value. One of them fixed the before value at $370,000, the after value at $330,300, with resulting difference of $39,700. Another expressed $370,000 as the before value against the after value of $325,000 for a difference of $45,000. The third fixed the before value at $346,000 and the after value at $307,600 for a dif-

ference of $38,400. For the appellees the valuation testimony was presented by one of the owners and three other witnesses reflecting a maximum before value of $484,000 and a minimum after value of $341,500. The range in the difference between before and after values as related by the witnesses for the appellees was $91,000 to $110,800.

The jury found the before value to be $408,280, the after value as $334,329.34, resulting in its verdict of $73,950.66. It is readily apparent that the jury's before value is within the range of the valuation figures expressed by the witnesses, being $24,220 less than the lowest before value presented by any witness for the owners and $75,720 less than the highest before value mentioned in evidence for the owners. It also is apparent that the before value as found by the jury is greater by $38,200 than the maximum before value of $370,000 fixed by two of the Department's witnesses. Thus, it is seen that the jury added slightly more than ten percent to the $370,000 estimated by the Department's witnesses as the proper before value. In doing this the jury discounted the before values as fixed for the owners from about six percent to approximately fifteen percent.

■ The after value as determined by the jury is somewhat higher than any after value mentioned by any witnesses for the Department, although it is within less than $5,000 of the after value of $330,300 fixed by one of the Department's witnesses. No elaboration is needed to support the conclusion that the Department is in no position to challenge the verdict as being based on passion or prejudice or unsupported by evidence of probative value as relates to the after value, since the jury's after value is greater than that presented for the Department and is within approximately one percent of the after value as shown for the Department. Thus, the only bone of contention must be in the jury's before-value figure.

**430**

The before value of the 692 acres as calculated by the jury reflects a per-acre evaluation of $590. The two most frequently mentioned comparable sales appearing in the testimony related to the Mason farm which sold for $549 per acre and the Moody farm which sold for $768 per acre. The appraisal witnesses testified that they had considered the distinguishing characteristics of the comparables and the property being condemned and had adjusted accordingly. They gave plausible reasons for these adjustments, and the issues of evaluation thus presented were peculiarly within the province of the jury to resolve.

Although no major structure was encompassed within the taking, there were two springs within the condemned area which served as a substantial source for a water system for the whole farm. About forty acres of the taken land had been used for raising tobacco during the four-year period just before the condemnation. It was shown that more than 700 rods of additional fencing will be needed because of the situation in which the property is left after the taking. Evidence was adduced reflecting diminution of market value by reason of the farm's being divided so as to make it impracticable to utilize the entire acreage economically as a farming unit. Countervailing evidence for the Department was heard, but it was not so overwhelming in its impact as to utterly refute evidence for the appellees. The jury could have been persuaded by the Department's evidence, but it had ample basis for reaching the conclusions which it did. In these circumstances, we may not say that the verdict appears at first blush to be excessive or rendered under the influence of passion or prejudice. Neither can it be concluded that there was a lack of probative evidence to sustain the verdict.

The judgment is affirmed on the original appeal and on the cross-appeal.

All concur except PALMORE, J., who did not participate in the decision.